law and regulations, form the foundation for the Massachusetts Medicaid program and establish
the defendants' obligations and responsibilities to Medicaid recipients. The plan includes all
treatment, services, and supports required by the Medicaid Act (mandatory services), numerous
services and treatment permitted by the Act (optional services), and several HCBS waiver
programs. Specifically, the plan includes care and treatment in nursing facilities, physician and
nursing services, a range of rehabilitative services like physical and occupational therapy,
personal care assistance, durable medical equipment like wheelchairs and assistive technology,
and certain home-based services like residential supports, vocational training and respite
services.

3.     Massachusetts' Waiver Programs

71.    In 2001, CMS approved a Section 1915 HCBS waiver to provide a wide range of
community services and supports solely to persons with traumatic brain injuries.

72.    In 2006, MassHealth submitted a demonstration waiver to CMS under Section
1115 of the Social Security Act to provide community alternatives for persons currently residing
in, or at risk of being admitted to, nursing facilities. The demonstration waiver, if approved by
CMS, would incorporate the HCBS waiver for persons with traumatic brain injury, as well as
other existing waiver programs for elders. Because it does not focus on persons with brain
injuries or even persons with disabilities, the demonstration waiver is not likely to address the
longstanding needs of the plaintiffs for integrated community services.

***D.     The Segregation and Discrimination of Persons with Serious Brain Injuries***

1.     The effects of unnecessary institutionalization on persons with brain
       injuries

73.    The named plaintiffs, and the majority of persons with serious brain injuries,
have spent weeks or months in acute care hospitals and rehabilitative facilities. Once their

21

acute treatment needs end, there are few community-based options for continued rehabilitative care. As a result, individuals with serious brain injuries have little choice but to be admitted to nursing and rehabilitation facilities in order to have their basic needs met.

74.     Nursing facilities are not homelike environments. Most are large, self-contained facilities, where available recreation, social activities, and medical care are provided in the same building where residents live, sleep, and eat. Residents share bedrooms and bathrooms. Living areas lack privacy, are sparsely furnished, and do not provide space for the personal items or belongings one would normally associate with a home.

75.     The congregate nature of these facilities limits residents' personal choices, individual expression, relationships, and freedom of association. Residents are often under-occupied and socially isolated, with limited exposure to the community or to age-appropriate peer groups. Opportunities to be outdoors or to participate in life outside the facility are limited or non-existent, except to the extent that family members can provide these opportunities for integration.

76.     Because they are usually large, segregated, and isolated from the rest of society, nursing and rehabilitation facilities inhibit meaningful community involvement by depriving residents of the opportunity to interact with non-disabled people in non-custodial relationships in the community. Residents often are not able to express basic human preferences, such as what to eat and where to go, or to exercise basic human rights, such as voting, working, intimacy and privacy. Residents often are denied the experiences of observing and interacting with others, enjoying the dignity and freedom of living in the community, and participating in the rhythm and activities of community life.

77. Active speech, occupational and physical therapies generally are not provided on an ongoing basis in nursing facilities. The plaintiffs' inability to access medically necessary, ongoing rehabilitative services has limited their potential for continued recovery, while jeopardizing the maintenance of their physical and independent living skills.

78. Perhaps most devastating for the named plaintiffs, and the class of individuals they represent, is the reality that these nursing and rehabilitation facility placements are indefinite, with little prospect for accessing the kinds of community support services needed to live in a less restrictive setting.

79. This lack of appropriate community support services, and the dependency on institutional care that results, forces the plaintiffs to reside in segregated settings, away from their children and families, away from their homes and communities. This isolation places an additional burden and strain on their families, who are sometimes forced to travel considerable distances to spend time with their loved ones and to monitor their care.

2. Limitations on the state service system for individuals with brain injuries

80. There is no state agency specifically devoted to serving persons with brain injuries. In the absence of an agency with a mandate and mission to serve persons with brain injuries, the MRC has been arbitrarily assigned the duty to administer the Brain Injury Waiver. In addition to its focus on vocational training and related community services, MRC now also administers the small state program called BISSCS, formerly SHIP. This is the only state program that coordinates services for persons with traumatic brain injuries. It explicitly excludes those with other types of brain injuries.

81. Despite the size and scope of this obligation, BISSCS's resources are limited and its network is wholly inadequate to meet the need for community-based services among persons

23

with brain injuries in Massachusetts. Applicants to BISSCS usually wait for years without receiving necessary services. Those residing in nursing and rehabilitation facilities usually never receive such services, and are arbitrarily excluded from the services they need to leave the institution. BISSCS' limited array of service options is insufficient to meet the needs of individuals seeking to transition from institutional settings to the community, effectively denying community access to nursing facility residents based on the severity of their disabilities.

82.     Although Massachusetts' 1915 waiver was originally approved to serve 200 individuals per year, two years later, the defendants reduced the capacity of their only waiver program for persons with brain injury 100. It formally renewed the program in 2004 at this reduced level, which remains in effect today. This reduction is not only unprecedented, since most States, including Massachusetts, usually seek increases in the capacity of their waivers, but also unjustified, since there were clearly more, rather than less, individuals with brain injuries who needed waiver services. The federal government approved this request in 2004. This HCBS waiver is now, and has always been, limited to persons with *traumatic* brain injuries, expressly excluding individuals whose injuries occurred as a result of an internal medical condition, disease or stroke.

83.     BISSCS' and the Massachusetts' HCBS traumatic brain injury waiver's categorical exclusion of persons with acquired brain injuries, leaves these individuals without any access to state or federally-funded, community-based supports, solely because of the nature and origin of their disability.

## E.     The Defendant's Responsibility for the Unnecessary Institutionalization of Persons with Brain Injuries

84.     The defendants have failed to provide adequate community support services to individuals with brain injuries. Indeed, they have categorically excluded individuals with

24

acquired brain injuries from accessing the only state and federally-funded programs delivering integrated community services.

85.     Furthermore, the defendants have failed to develop and implement a comprehensive plan for placing qualified persons with brain injuries in the community and avoiding their prolonged, unnecessary institutionalization. Instead, with full knowledge of the need and numbers of persons with brain injuries who are unnecessarily institutionalized in nursing facilities, the defendants have administered the limited community programs that do exist in a manner which effectively excludes persons with serious brain injuries in nursing facilities. As a result, there have been few persons with brain injuries who have been able to leave nursing and rehabilitation facilities over the past decade. Instead, there is an increasing number of such individuals who are now needlessly segregated and even more who are at imminent risk of such segregation.

86.     Moreover, by failing to provide a sufficient array of community settings and supports for persons with brain injuries, the defendants have effectively required such individuals to become institutionalized as a condition of obtaining long-term care.

87.     The defendants have administered the state Medicaid system and its programs in a manner that perpetuates the segregation of persons with brain injuries. These methods of administration arbitrarily limit access to integrated, community support services by persons with brain injuries in nursing facilities. Specifically, limitations on the availability of Medicaid-funded, community support services result from:

(1)     the lack of information provided to individuals with brain injuries and their families about community-based services and the HCBS waiver specifically;

25

(2)     inadequate assessments to determine an individual's ability to benefit from community support services;

(3)     the failure to provide nursing and rehabilitation facility residents and their guardians with a meaningful choice of community as well as institutional services;

(4)     the failure to offer meaningful access to the community services that are available, and the discriminatory exclusion of persons with severe brain injuries and/or acquired brain injuries from the few community services that do exist;

(5)     decisions and actions that intentionally limit the number and availability of community services, including federal funding for such services;

(6)     policies, procedures, restrictions and program definitions which unreasonably limit access to ongoing rehabilitative services for individuals with brain injuries; and

(7)     inadequacies in the funding of community support services, including the unreasonable refusal to seek available federal funding for such services, that the defendants are authorized to provide for Medicaid-eligible, individuals with brain injuries.

## V.    LEGAL CLAIMS

88.     In their capacities as state officials, and under color of law, the defendants have subjected the plaintiffs to prolonged and unnecessary institutionalization, resulting in violations of the ADA, Rehabilitation Act, and Medicaid Act.

### Count I: The Americans with Disabilities Act

The plaintiffs re-allege paragraphs 1 through 88 as though fully set forth herein.

26

*A.     Violation of the ADA's Integration Mandate*

89.     The plaintiffs and the members of the plaintiff class are qualified individuals with disabilities within the meaning of the ADA. 42 U.S.C. § 12131(2).

90.     Title II of the ADA requires that "a public entity shall administer services, programs and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d).

91.     The named plaintiffs and plaintiff class members qualify for the defendants' program of long-term rehabilitative services, and would benefit from community support services. Although community programs are the most integrated setting appropriate to meet their needs, the plaintiffs remain institutionalized in nursing or rehabilitation facilities, or at imminent risk of such institutionalization. By denying them access to existing community programs, and by requiring that plaintiffs to be confined in the segregated institutional settings in order to receive rehabilitative services, defendants violate the ADA's integration mandate.

92.     It would not fundamentally alter the defendants' programs, services, or activities to provide plaintiffs with the supports necessary to reside in the community. The defendants do not have a comprehensive, effectively working plan for serving people with brain injuries in the most integrated setting appropriate for their needs.

*B.     Methods of Administration*

93.     Regulations implementing Title II of the ADA provide that "a public entity may not, directly or through contractual or other arrangements, utilize criteria or other methods of administration: (i) that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; [or] (ii) that have the purpose or effect of defeating or

27

substantially impairing accomplishment of the objectives of the entity's program with respect to individuals with disabilities ...." 28 C.F.R. § 35.130(b)(3).

94.     The defendants' criteria and methods of administering Massachusetts' long-term care system for persons with brain injuries have subjected the plaintiffs to unnecessary and unjustified segregation. The defendants administer the only joint state and federally-funded programs for persons with brain injuries in a manner that fails to inform nursing and rehabilitation facility residents of the programs, fails to assess them for the programs, fails to offer them a choice of the waiver program, and fails to afford them equal access to these programs.

### C.     *Discrimination Based on Nature and Severity of Disability*

95.     The ADA prohibits discrimination on the basis of disability. 42 U.S.C. § 12132 *et seq.* The defendants illegally discriminate against qualified persons with disabilities who reside in nursing and rehabilitation facilities based upon the nature and severity of their disability. Both the defendants' state and federally-funded community programs totally exclude persons with acquired brain injuries and effectively exclude those with the most serious brain injuries.

96.     The exclusion of individuals with acquired brain injuries constitutes discrimination on the basis of disability and results in their continued, unnecessary segregation in violation of the ADA. The few community supports and services that are available in the Commonwealth are not of sufficient duration and intensity to allow those with serious brain injuries to transition from nursing and rehabilitation facilities to the community, thus discriminating against the plaintiff class based on the severity of their disabilities.

### Count II: Section 504 of the Rehabilitation Act

97.     The plaintiffs re-allege paragraphs 1 through 96 as though fully set forth herein.

98.     The plaintiffs are qualified individuals with disabilities under Section 504 of the Rehabilitation Act. 29 U.S.C. § 794(a).

99.     EOHHS and its state agencies receive federal financial assistance.

100.    The regulations accompanying Section 504 provide that: "[r]ecipients shall administer programs and activities in the most integrated setting appropriate to the needs of qualified handicapped persons." 28 C.F.R. § 41.51(d).

101.    These regulations further prohibit recipients of federal financial assistance from "utiliz[ing] criteria or methods of administration ... (i) [t]hat have the effect of subjecting handicapped persons to discrimination on the basis of handicap; [or] (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program with respect to handicapped persons." 28 C.F.R. § 41.51(b)(3); 45 C.F.R. § 84.4(b).

102.    The named plaintiffs and plaintiff class members qualify for the defendants' program of long-term rehabilitative services, and would benefit from community support services.  Although the community is the most integrated setting appropriate to meet their needs, the plaintiffs remain institutionalized in nursing and rehabilitation facilities, or at risk of such institutionalization.  By denying them access to existing community programs, and by requiring that plaintiffs and class members be confined in the segregated institutional settings in order to receive needed rehabilitative services, the defendants violate § 504.

103.    The defendants' criteria and methods of administering their system of long-term services for people with serious brain injuries subject plaintiffs to illegal discrimination and unnecessary segregation.

104. It would not fundamentally alter the defendants' programs, services, or activities to provide the plaintiffs with the services necessary to allow them to live in the community.

## Count III: Title XIX of the Social Security Act

105. The plaintiffs re-allege paragraphs 1 through 104 as though fully set forth herein.

106. Title XIX requires states to provide Medicaid benefits to all eligible persons with reasonable promptness and for as long as medically necessary. 42 U.S.C. §§ 1396a(a)(8); 1396a(a)(10)(A). Medicaid waiver programs must be administered in a fair and efficient manner, must inform persons about the program, and must afford qualified persons a choice of program services. 42 U.S.C. § 1396n(c). Provision of services must not be delayed by the agencies' administrative procedures. 42 C.F.R § 435.930(a).

107. The defendants have failed to provide medically necessary, specialized therapies to eligible nursing home residents with reasonable promptness, in violation of 42 U.S.C. §§ 1396a(a)(8); 1396a(a)(10)(A).

108. The defendants also have failed to provide residents of nursing and rehabilitation facilities with brain injuries: 1) notice of, and equal opportunities to apply for, waiver services; 2) an assessment of their eligibility for such services; and 3) meaningful choice between institutional and HCB waiver services, in violation of 42 U.S.C. § 1396n(e).

## VI. PRAYERS FOR RELIEF

WHEREFORE, the plaintiffs respectfully request that this Court:

1. Certify this case a class action pursuant to Fed. R. Civ. P. 23;

2. Grant preliminary and permanent injunctive relief requiring the defendants to:

(1) inform residents of nursing and rehabilitation facilities, their guardians, families, and all members of the plaintiff class of all state and federally-funded programs that provide community services to persons with brain injuries; assess

30

all qualified residents of nursing and rehabilitation facilities for such programs; offer eligible residents a choice of such programs; and administer such programs in a manner that ensures equal access for such residents, regardless of the type or severity of their brain injuries;

(2)     develop and implement a comprehensive, effectively working plan that provides integrated, community settings and supports to residents of nursing and rehabilitation facilities with brain injuries and all members of the plaintiff class, regardless of the type or severity of their brain injuries;

(3)     implement such plan in a manner that ensures that any wait list for community settings and supports moves at a reasonable pace, so that all current nursing and rehabilitation facility residents with brain injuries and all members of the plaintiff class who would benefit from community placement are actually placed within five years; and

(4)     promptly provide Medicaid-covered rehabilitative services to residents with brain injuries in nursing and rehabilitation facilities for as long as medically necessary, in order to promote their rehabilitation and opportunities for community living and/or prevent the deterioration of their basic functioning.

3.     Issue a declaratory judgment stating that the defendants have violated the Americans with Disabilities Act, the Rehabilitation Act, and the Social Security Act in their failure to prevent the unnecessary segregation and institutionalization of persons with brain injuries and their failure to provide community-based services to Medicaid-eligible individuals with brain injuries in nursing and rehabilitation facilities and other members of the plaintiff class.

31

4.    Award the plaintiffs costs of this litigation and their reasonable attorneys' fees;

and.

5.    Grant such further and other relief as may be just and proper.

**BY THEIR ATTORNEYS,** -

Steven J. Schwartz (BBO # 448440)
Kathryn Rucker (BBO# 644697)
Center for Public Representation
22 Green Street
Northampton, MA 01060
413-586-6024

Richard A. Johnston (BBO#253420)
Michael R. Dube (BBO # 654748)
Miranda Hooker (BBO # 661569)
Anne McLaughlin (BBO # 666081)
Wilmer Cutler Pickering Hale and Dorr, LLP
60 State Street
Boston, MA 02109
617-526-6000

Dated: May 17, 2007