### Policy for ABI-RH and MFP-RS Waivers

**Acquired Brain Injury–Residential Habilitation Waiver Program**
**Money Follows the Person–Residential Supports Waiver Program**

**Policy and Procedures**

## I.  Purpose

The purpose of this policy is to lay out the process, principles, and method of individual service planning and informal conferences under the Acquired Brain Injury—Residential Habilitation (ABI-RH) and Money Follows the Person-Residential Supports (MFP-RS) Home and Community-based Services (HCBS) Waivers ("the Waivers"); to define and safeguard the individual rights of Waiver participants in these Waivers; and to indicate the applicable regulations governing investigations and reporting responsibilities of the State Agency and providers under these Waivers.

## II.  Scope

This policy applies to the State Agency responsible for the operation of the ABI-RH and MFP-RS Waiver programs. This policy provides protections and defines responsibilities of the individuals that are receiving services and supports through these Waivers as well as the obligations and responsibilities of the State Agency and the Waiver providers coordinating and providing services and supports under the ABI-RH and MFP-RS Waivers. In the event of any conflict in interpretation between this Policy and the referenced Waivers, MassHealth regulations, applicable case law, or other applicable statutes or laws, the conflict shall be resolved in favor of the other authority and laws, as applicable.

## III.  Definitions

**Consent:** voluntary approval given by written or verbal word, or implied by the action of a person, with adequate information and sufficient understanding to comprehend the consequences of the decision.

**Department of Developmental Services (DDS):** the state agency organized under M.G.L. c. 19B.

**Designated Representative:** a person who has come forward as an advocate for the Waiver participant's interests, and whom the participant has, through consent, chosen as a representative in connection with the development and review of the ISP, who is not otherwise disqualified from taking an appeal therefrom, and who is acknowledged by the State Agency to be the designated representative for the individual in connection with such service planning in accordance with this policy.

**Disabled Person's Protection Commission (DPPC):** the commission established under G.L. c.19C to provide for the investigation and remediation of instances of abuse and

1

December 30, 2016

<u>**Policy for ABI-RH and MFP-RS Waivers**</u>

neglect committed against adults with disabilities.

**Home and Community-based Service (HCBS) Waiver Program (Waiver):** one of the following programs established pursuant to 42 U.S.C. 1396n: Acquired Brain Injury—Residential Habilitation (ABI-RH) or Money Follows the Person—Residential Supports (MFP-RS).

**Human Rights Committee:** a group established by providers of residential services that assists the provider to affirm, promote, and protect the human and civil rights of individuals served and to monitor and review the activities of the provider with regard to the human and civil rights of those individuals.

**Individual Service Plan (ISP):** a written plan that sets forth the services and supports for Waiver participants that is developed, implemented, reviewed, and modified according to the requirements of this Policy. The ISP may also be known as the Participant's plan of care.

**Legal Representative or Legally Authorized Representative (LAR):** a person representing the participant in connection with a particular matter, including a health care agent, durable power of attorney, representative payee, legal advocate/attorney, or court-appointed guardian or conservator.

**Least Restrictive:** settings, modes of services, and styles of living or working that are most similar to and most integrated with what is typical and age-appropriate in the community, and which interfere the least with the Waiver participant's independence.

**MassHealth:** the medical assistance and benefit programs administered by the Executive Office of Health and Human Services in accordance with the provisions of M.G.L. c. 118E and pursuant to Title XIX of the Social Security Act (42 U.S.C. 1396), Title XXI of the Social Security Act (42 U.S.C. 1397), M.G.L. c. 118E, and other applicable laws and waivers to provide and pay for medical services to eligible members.

**Objective:** short term outcomes stated in behavioral or otherwise measurable terms, expected to be achieved through the provision of a particular service or support, the implementation of a particular intervention strategy, or a change of modification of the environment.

**Participant:** see definition for Waiver Participant.

**Positive Behavior Supports:** a systematic, person-centered approach to understanding the reasons for behavior and applying evidence-based practices for prevention, proactive intervention, teaching and responding to behavior, with the goal of achieving meaningful social outcomes, increasing learning and enhancing quality of life across the lifespan. PBS includes Universal Supports, Targeted Supports, and Intensive Supports, as defined at 115 CMR 5.14, when promulgated.

2

December 30, 2016

## Policy for ABI-RH and MFP-RS Waivers

**Provider:** the individual or other legal entity with day-to-day responsibility for the operation of services or supports or homes regulated by the State Agency by law or contract.

**Regional Program Coordinator:** A state employee charged with the implementation of the overall HCBS Waiver Program operational service delivery system for the geographic region designated by the state agency responsible for the operation of the Waiver.

**Representative:** see definition for Designated Representative

**Residency Agreements:** legally enforceable agreements entered into by an individual and a provider in accordance with 42 CFR 441.301(C)(4)(vi)(A).

**Service Coordinator:** the person designated by the state agency to arrange, coordinate, or monitor, or to remain informed about, services or supports provided, purchased, or arranged by the state agency for a particular participant and to be responsible for the development of an ISP for the Waiver participant.

**Services:** Home and community-based waiver services covered under the Waiver in which the Waiver participant is enrolled and as described in Appendix C of the applicable federally-approved Waiver application.

**State Agency:** The Department of Developmental Services (DDS) in its operation of the HCBS Waivers and pursuant to an Interdepartmental Service Agreement with the Executive Office of Health and Human Services.

**Supports:** resources and strategies that promote the interests and causes of Waiver participants and that enable participants to access resources, information, and relationships inherent in integrated work and living environments, and that result in participants' enhanced independence, productivity, community integration, and satisfaction.

**Vision Statement:** a statement of what is important to the Waiver participant in his or her life. It describes the participant's preferences on how he or she wishes to live, work, and spend his or her leisure time and identifies interests, relationships, and activities he or she would like to continue or explore. If the participant is unable to fully express him or herself, the ISP team will assist in the development of the participant's vision statement. The vision statement expresses the participant's vision; it does not create any enforceable rights and is not binding on the State Agency.

**Waiver Participant:** a MassHealth member who has been determined eligible for, and is enrolled in, an ABI-RH or MFP-RS Waiver.

## IV. Policy

A. Service Planning: The following are the agreed-upon principles and timelines for

3

December 30, 2016

**Policy for ABI-RH and MFP-RS Waivers**

planning and developing an individual service plan for individuals served under the ABI-RH or MFP-RS Waivers. Notwithstanding any language contained herein, the grounds for an appeal of an Individual Service Plan shall be in accordance with, and limited to, the grounds set forth in the MassHealth Fair Hearing regulation at 130 CMR 610.032: *Grounds for Appeal*.

1.  Application and Scope of Individual Service Plans: all Waiver participants shall receive services under the Waiver programs in accordance with the requirements of the Waiver provisions and the Individual Service Plan.

2.  Principles of Individual Service Planning: The following principles govern service planning:

    a.  Respect for the dignity and rights of each participant;

    b.  Humane and adequate care and treatment;

    c.  Self-determination and freedom of choice to the person's fullest capacity;

    d.  The opportunity to live and receive services in the least restrictive and most typical setting possible;

    e.  The opportunity to undergo typical developmental experiences, even though such experiences may entail an element of risk, provided that the person's safety and well-being will not be unreasonably jeopardized; and

    f.  The opportunity to engage in activities and styles of living that encourage and maintain the integration of the participant in the community through individualized social and physical environments.

3.  Participation in Individual Service Planning:

    a.  The ISP Team: An Individual Service Plan (ISP) shall be developed with input from the participant, the participant's family if authorized, the participant's guardian or LAR, if applicable, the participant's service coordinator, the provider(s) of applicable services to be included in the ISP, designated representatives of the participant, and any others who provide friendship and support to the participant or those that the participant considers necessary unless the participant or guardian knowingly objects to such person's participation.

    b.  The State Agency shall provide reasonable assistance and accommodations to enable the participant and other members of the ISP Team to participate meaningfully in the development, review, and modification of the ISP.

4

December 30, 2016

**Policy for ABI-RH and MFP-RS Waivers**

    c. The participant shall be involved as fully as possible to participate in the process, work with the service coordinator to develop the vision statement, determine the issues for and format of the ISP meeting, determine who to invite to the ISP meeting, indicate approval of or concerns related to the ISP, participate fully in the implementation, modification, and review of the ISP, and provide ongoing feedback about satisfaction with ISP implementation and the need for modification.

4. <u>Service Coordinator Responsibilities</u>: The service coordinator shall:

    a. Explain the purpose of the ISP and the ISP meeting to the participant and guardian or LAR, if applicable, within 15 days of the initiation of services or supports or at least 45 days prior to the projected date of the ISP meeting;

    b. Develop an understanding of the participant's vision statement, goals, satisfaction with services, and current circumstances;

    c. In conjunction with the participant and guardian or LAR, if applicable, determine the issues to be reviewed at the ISP meeting, who should be invited to attend, and when and where the ISP meeting should be held;

    d. Conduct an in-person meeting with the participant and, where applicable, with the guardian or LAR, if applicable, to develop the vision statement for the participant's first ISP, when significant changes have occurred or are anticipated in the participant's life, or at the request of the participant or guardian;

    e. Consult with the participant's family and guardian or LAR, if applicable and authorized to do so, related to the ISP process;

    f. Within 15 days of the initiation of services or supports or at least 45 days prior to the projected date of the ISP meeting, determine if any assessments or professional consultations are necessary for the development, modification, or review of the ISP, and arrange for such assessments or consultations that are not the responsibility of any current provider;

    g. At least 30 days in advance of each ISP meeting, provide written notice to the participant and ISP team of the date, time, place, and purpose of the meeting;

    h. With appropriate authorization and upon request, make assessments and consultations available to the participant and ISP team at least seven days in advance of the ISP meeting;

December 30, 2016

**Policy for ABI-RH and MFP-RS Waivers**

    i.   Convene and facilitate meetings for the development, modification, and review of the participant's ISP;

    j.   Ensure that ISP meetings are conducted in a manner that promotes meaningful participation by the participant;

    k.   Arrange for reasonable assistance and accommodations to enable the participant and other members of the ISP team to participate meaningfully in the development, review, and modification of the ISP;

    l.   Monitor the implementation of the ISP and the adequacy and appropriateness of supports and services being provided based on the requirements of the ISP;

    m.   Facilitate participants' access to the Service Plan Informal Conference Process pursuant to this policy;

    n.   Coordinate the provision of supports to the participant in accordance with the ISP;

    o.   On a quarterly basis, review and evaluate the implementation of the ISP and the need for any modifications, as well as the satisfaction of the participant and the participant's family and guardian and LAR, if applicable, with the supports and services provided;

    p.   Maintain records of the ISP reviews in the participant's record; and

    q.   On a quarterly basis, or more frequently if beneficial and if the participant agrees, visit with and discuss any issues with the participant related to the services and supports provided.

5.   <u>Service Provider Responsibilities</u>: the State Agency shall ensure that the providers of services and supports pursuant to the Individual Service Plan (ISP):

    a.   Complete assessments or professional consultations of the participant that are within the legal or contractual responsibility of the provider and forward them to the participant's service coordinator at least 15 days in advance of the ISP meeting;

    b.   Base assessments on current, complete, and accurate information and focus on the participant's relative strengths, needs, and opportunities for development;

    c.   Work collaboratively with the participant and other team members to identify the participant's goals;

6

**Policy for ABI-RH and MFP-RS Waivers**

    d.  Participate in the development of an ISP when provider participation is likely to be effective in assisting the participant to achieve the participant's goals;

    e.  Develop proposed ISP objectives and support strategies that may relate to the participant's vision statement and are consistent with the participant's assessed needs and to forward them to the service coordinator at least 15 days prior to the ISP meeting. Objectives and support strategies shall be individualized, measurable, and include methods for evaluating progress;

    f.  Implement the ISP by providing the agreed upon supports;

    g.  Provide reports regarding the implementation of the ISP and provision of services to the service coordinator, participant, guardian or LAR, if applicable, and family, if authorized, at least every six months or more frequently if the service coordinator agrees such frequency is reasonable; and

    h.  Promptly notify the service coordinator of issues or circumstances that may affect the appropriateness of the current ISP or which may warrant modification of the ISP.

6.  Assessments and Consultations:

    a.  The purpose of assessments and consultations are to obtain information that will assist the participant and other team members to establish goals related to one or more outcomes, to identify the participant's capabilities and areas in need of learning and skill development relative to those goals, and to identify the strategies and supports that are the least restrictive and likely to be effective in assisting the participant to attain his or her goals.

    b.  Conduct of Assessments and Consultations shall reflect consideration of the participant's cultural, ethnic, and linguistic background, as well as any need for accommodation based upon disability or other factors. The assessments and consultations regarding particular skills or behaviors shall, as appropriate and feasible, be conducted in the actual environment in which the participant would typically perform the skill or behavior, or in a similar setting. Assessments and consultations shall be conducted with respect for the dignity, comfort, and convenience of the participant.

    c.  The following assessments shall be reviewed by the service coordinator on an annual basis:

        1.  an assessment of the general type of services and supports needed by the participant;

7

**Policy for ABI-RH and MFP-RS Waivers**

<ol type="2" start="2">
<li>an assessment of the participant's ability to make informed decisions regarding his or her financial and personal affairs; and</li>
<li>an assessment by MassHealth of the participant's financial status and eligibility for services or benefits from other entities.</li>
</ol>

<ol type="a" start="4">
<li value="d">In the case of participants residing in homes licensed by the State Agency, the residential provider shall provide or arrange for annual health and dental assessments.</li>

<li value="e">Providers of services and supports for Waiver participants shall conduct annual safety assessments.</li>

<li value="f">The service coordinator shall determine, in conjunction with the participant and other ISP team members, whether additional assessments and professional consultations would benefit the participant or assist the team in identifying strengths and limitations related to the participant's ability to live with greater independence and social competence in less restrictive environments. Such assessments may include, but shall not be limited to, an assessment of the participant's daily living skills, communication skills, psychological status, social network, and whether the participant would benefit from assistive technology.</li>

<li value="g">Any assessments and consultations identified pursuant to IV.A.6.f. shall be performed by the current provider who has primary responsibility for providing supports encompassing the area to be assessed. Subject to the availability of resources, assessments which are not within the competence or responsibility of any of the current providers shall be arranged by the service coordinator and provided or purchased by the State Agency.</li>

<li value="h">If requested, the service coordinator shall meet with the participant, his or her guardian or LAR, if applicable, and the participant's family, if authorized, in advance of the ISP meeting to discuss the assessments and consultations and shall, if feasible and requested, arrange an explanatory meeting with the person who performed the assessment or consultation.</li>
</ol>

7. Development of the Individual Service Plan (ISP)

<ol type="a">
<li>ISP Meeting. The service coordinator shall convene and facilitate a meeting with the participant and other members of the ISP team to develop a support plan which sets forth the following: the vision statement and goals of the participant; the supports needed by the participant to attain those goals, which shall be based on the assessed needs of the participant without regard to the availability of such</li>
</ol>

8

**Policy for ABI-RH and MFP-RS Waivers**

supports; the availability of needed supports; the party responsible for providing supports; the frequency and duration of supports; and strategies for meeting the support needs of the participant. If the participant refuses to attend the ISP meeting, the team shall consider what, if any, adjustments could be made in the ISP meeting to encourage greater participation by the participant.

b.  Outcomes. The goals, objectives, and any supports or strategies identified in the ISP must be consistent with and promote the following outcomes for participants:

1.  Rights and Dignity. The participant's rights are respected, he or she is supported in the responsible exercise of those rights, and other supports are in place to assist, as necessary, in protecting the participant's human and civil rights; the participant's dignity is recognized and affirmed in the participant's home and community and in the manner in which supports are provided.

2.  Participant Control. The participant has opportunities to exercise control and choice in his or her life, and has access to education, experiences, and supports to increase his or her self-determination; the participant's opinions and preferences are listened to and treated seriously; the participant's needs and preferences are reflected in his or her activities and routines.

3.  Community Membership. The participant has a home which is similar in appearance to surrounding homes, which offers safety, refuge, rest, and satisfaction to the participant, and into which the participant can invite friends, family, neighbors and others to whom he or she wishes to offer hospitality; he or she has many and varied opportunities to participate in and contribute to the life of his or her community through work and through integrated social and recreational activities in culturally typical settings.

4.  Relationships. The participant has opportunities and support, as needed, to develop, sustain, and strengthen varied and meaningful relationships with family, friends, neighbors and co-workers

5.  Personal Growth and Accomplishments. The participant has access to the supports necessary to enable him or her to contribute to his or her community, be as self-reliant as possible, develop his or her unique talents and abilities, and achieve his or her personal goals

6.  Personal Well-being (Health, Safety, and Economic Security). The participant receives health care and related services which are

9

December 30, 2016

**Policy for ABI-RH and MFP-RS Waivers**

sufficient and appropriate to optimize the participant's health and well-being; he or she lives, and works if applicable, in environments that are safe, secure, and are adapted if necessary to meet the participant's needs, and safeguards are in place to respond to emergencies and threats to the participant's health or safety; he or she has sufficient economic resources to meet his or her needs.

c. Timing of the ISP Meeting. Before the participant transitions into the community, the service coordinator shall develop an interim ISP with input from the participant and his or her guardian or LAR if applicable, and the residential services provider. The service coordinator shall convene a meeting to continue to develop the ISP within 60 days after the participant begins receiving services and supports that require the development of an ISP and every year thereafter.

d. ISP Meeting Components. The ISP meeting shall include but shall not be limited to the following:

   1. Discussion of the participant's vision statement and goals;

   2. Discussion of recent experiences and events that may affect the participant's immediate future, general health, safety, or long-term goals;

   3. Discussion of the participant's satisfaction and ability to achieve his or her goals under the current circumstances, including his or her home, day or employment, behavioral supports, and other services and supports;

   4. Identification of goals related to the participant's vision statement and address assessed needs of the participant;

   5. Development of a service agreement as a part of the ISP that sets forth:

      a. specific objectives related to the participant's goals;

      b. the strategies and supports that are the least restrictive and that will be utilized to assist the participant to attain goals and objectives, which may include but shall not be limited to instruction in skills related to health and safety, self-care, communication, home living, work, leisure, social interactions, community use, self-direction and functional academics, provision of medical, dental, and specialty services such as physical or occupational therapy,

10

December 30, 2016

**Policy for ABI-RH and MFP-RS Waivers**

  psychiatric or psychological services, legal or advocacy services, and the party responsible for implementation;

  c. the settings in which the strategies will be implemented and the services and supports provided;

  d. the expected duration and frequency of the supports;

  e. the criteria to be utilized in evaluating the effectiveness of services and supports in achieving the participant's goals;

  f. any unmet support needs and the strategies that will be used to address those needs;

  g. the ISP team member(s) responsible for monitoring and reporting on implementation of the service agreement as well as the format and frequency of such monitoring and reporting; and

  h. the date of the next review of the ISP, which can be no later than one year from the date of the ISP meeting.

6. Discussion of newly identified changes in a participant's abilities or life circumstances, if any, that require monitoring by the ISP team over the course of the ISP year.

e. Distribution, Approval, and Implementation of the ISP:

1. Within 45 days following the ISP meeting, the ISP shall be reviewed by the Regional Program Coordinator or designee, approved or disapproved in part or in whole, and mailed to the participant, family, if authorized, guardian or LAR, if applicable, designated representative, if applicable, and providers. A notice of appeal rights that are available under Mass Health regulations 130 CMR 610: *MassHealth: Fair Hearing Rules* will be mailed with the ISP. The service coordinator shall provide notice to the participant, his or her family, if authorized, and guardian or LAR, if applicable, of his or her availability within ten days of receipt of the ISP to explain the ISP.

2. If the Regional Program Coordinator or designee disapproves the ISP, in whole or in part, he or she shall discuss with the service coordinator the reasons for disapproval and suggest changes to the ISP. If the suggested changes would be considered modifications of the ISP, the service coordinator shall consult with the participant and other team members regarding the proposed

11

**Policy for ABI-RH and MFP-RS Waivers**

changes to the ISP. The service coordinator may reconvene the ISP meeting for the purpose of revising the ISP in accordance with the recommendations of the Regional Program Coordinator if the service coordinator determines that the ISP meeting must be reconvened in order to develop an appropriate ISP, or at the request of the participant or his or her family, guardian, or LAR.

3. The participant and his or her guardian or LAR, if applicable, will be asked to signify, in writing, their approval or appeal of the ISP. Any participant with a right of appeal under MassHealth 130 CMR 610: *MassHealth: Fair Hearing Rules* will be deemed to agree to the plan unless an appeal is filed within the limits set forth in 130 CMR 610: *MassHealth: Fair Hearing Rules*.

4. When feasible and with the approval of the Regional Program Coordinator or designee and all parties having a right of appeal under MassHealth regulations 130 CMR 610: *MassHealth: Fair Hearing Rules* as well as the provider, the ISP or any portion thereof may be implemented prior to completion of the distribution and approval process.

8. Review of Individual Service Plans:

   a. Frequency of Review. The ISP shall be reviewed and updated on an annual basis. The participant or other team members may request more frequent reviews depending on the participant's desires, goals, needs, and circumstances.

   b. Within one year of the date on which an ISP was developed, the service coordinator shall convene a meeting of the team to review and update the participant's ISP to develop an ISP for the upcoming year.

   c. The service coordinator shall obtain and distribute any new or updated assessments, review monitoring reports generated by the State Agency and the provider(s), and in consultation with the participant and other team members, make appropriate revisions to the ISP based on a review of the following:

      1. the satisfaction of the participant and others, including the participant's family and guardian or LAR, if applicable;

      2. progress toward achieving the goals identified in the ISP;

      3. any significant changes in the participant's circumstances or abilities including:

12

December 30, 2016

**Policy for ABI-RH and MFP-RS Waivers**

    a. changes in the participant's physical or mental health, including a review of the appropriateness and effectiveness of current medications, if applicable;

    b. changes in the participant's financial resources;

    c. changes which may affect the participant's service or support needs;

    d. changes in the participant's ability to make informed decisions regarding his or her personal or financial affairs; and

    e. changes in the availability of needed services and supports.

4. whether the goals identified in the ISP are consistent with the current desires and needs of the participant and whether the strategies and supports identified in the ISP continue to be the least restrictive, appropriate and available strategies and supports to promote achievement of those goals; and

5. the continued effectiveness and appropriateness of any authorizations given by the participant, his or her guardian or LAR, if applicable, a court, or other authority.

    d. Distribution, Approval, and Implementation. The updated ISP shall be distributed, approved, and implemented in accordance with the procedures set forth above.

9. Modification of Individual Service Plans (ISP)

    a. The ISP shall be modified when necessary to reflect changes in the participant's goals and needs, to promote a quality of life for the participant which is consistent with the outcomes set forth above, or to provide for the least restrictive, most adequate and appropriate services and supports consistent with the participant's desires and needs.

    b. Any of the following changes, unless proposed as part of the annual review process, shall be considered a modification of the ISP:

        1. Any change in the goals for the participant identified;

        2. Any change in the strategies or types of supports identified pursuant to section IV.A.7.d.5.b. of this policy that will be used to assist the participant to attain the identified goals or address

December 30, 2016

**Policy for ABI-RH and MFP-RS Waivers**

unmet support needs identified pursuant to section IV.A.7.d.5.f. of this policy;

3. Any change in the duration or frequency of services and supports; and

4. A change in the location of a participant's residence from a home operated by a provider of residential supports licensed by the State Agency to another such home. However, if the change in residence results from requirements of competitive procurement or is necessitated by circumstances such as contract termination, in whole or in part, lease termination, foreclosure, or any unsafe or hazardous condition of the residence, such change shall not be considered a modification within the meaning of section IV.A.9. of this policy.

c. Requests for modifications shall be addressed to the service coordinator and may be initiated by the participant, the participant's family if authorized, the participant's guardian or LAR, if applicable, the service coordinator, the current provider(s) of services and supports, and the participant's designated representative.

d. A meeting to determine whether a requested modification should be made shall be convened by the service coordinator as soon as possible but at least within 30 days of the request for the modification:

1. The following persons shall be invited to attend the modification meeting: the participant, the participant's family, if authorized, guardian or LAR, if applicable, and designated representative, if applicable, and providers of services or supports to the participant.

2. The modification meeting may be held in conjunction with any other meeting that pertains to the ISP that is being held within 30 days of the request for modification.

3. At least ten days' notice shall be provided to the participants prior to a meeting at which a requested modification is to be considered.

e. The modification meeting and any timeline related to such meeting may be waived by the service coordinator at his or her discretion with the documented approval of the participant, if not under guardianship, or the participant's guardian or LAR, if applicable, if the participant does not object.

December 30, 2016

**Policy for ABI-RH and MFP-RS Waivers**

f.  In the case of any such waiver, the modification may be implemented subject to the requirements below.

g.  Within ten days after a modification meeting, or after waiver of such meeting, recommended modifications shall be reviewed by the Regional Program Coordinator or designee, and approved or disapproved. The service coordinator shall notify the team members invited to participate in the modification meeting of the decision on the requested modification and of the participant's right to appeal and shall, if applicable, issue a modified ISP.

h.  Emergency Modification. Where modifications are in response to circumstances that pose an emergency involving a serious or immediate threat to the health or safety of the participant or others, the modification may be implemented immediately and the modification meeting may be postponed to a date no later than 30 days after the emergency. On or before the next business day, the service coordinator shall notify all persons eligible to participate in the modification meeting of the emergency modification.

10. Modifications to the ISP Involving a Change in Residential Habilitation Location:

   a.  Scope of Modifications Involving Change in Residential Habilitation Service Location: this policy applies to proposed or actual changes in the residential habilitation service location of a Waiver participant from one service location to another service location in the course of the Waiver participant's receipt of residential habilitation Waiver services, and while remaining eligible for the Waiver in which the participant is enrolled.

   b.  In the event a Waiver participant's residential service location proves unsuccessful such that the Waiver participant's residential habilitation provider determines that it can no longer safely serve the Waiver participant at that location, the State Agency, after making efforts to address the identified safety issue, shall make best efforts to locate an alternative residential habilitation service location covered under the applicable Waiver and identify applicable Waiver and Medicaid State Plan services for the participant to maintain Waiver clinical eligibility. In the event the provider prevails in an eviction proceeding against a participant pursuant to the terms of a legally enforceable agreement entered into with a provider, such as a Residency Agreement, in accordance with 42 CMR 441.301(C)(4)(vi)(A), the State Agency shall make best efforts to locate an alternative residential habilitation service location covered under the applicable Waiver and identify applicable Waiver and Medicaid State Plan

15

### Policy for ABI-RH and MFP-RS Waivers

services for the participant to maintain Waiver clinical eligibility. Waiver participants shall be afforded their rights under the Individual Service Plan Informal Conference Resolution process in this policy and 130 CMR 610: *MassHealth: Fair Hearing Rules*. In the event that no alternative residential habilitation service location covered under the applicable Waiver is deemed safe and available for the Waiver participant, after best efforts are made, the Waiver participant may be re-determined for Waiver clinical eligibility. In such event, the Waiver participant may exercise his or her right of appeal under 130 CMR 610: *MassHealth: Fair Hearing Rules*.

c.  The following situations are not considered changes of residential habilitation service location pursuant to this policy:

1.  Movement within a residential habilitation service location;

2.  Relocation to a new residential habilitation service location due to a termination of a residential habilitation provider's lease of a service location or foreclosure of the service location, or similar circumstances; and

3.  Change in identity of the residential habilitation service provider pursuant to contract award involving no move of the Waiver participant.

d.  For modifications involving a change in residential habilitation service location, all parties required to participate in the ISP modification meeting shall receive written notice of the proposed residential habilitation service location. The written notice shall include:

1.  The address of the proposed residential habilitation service location;

2.  A statement of the reason for the proposed change in service location;

3.  A statement that  parties may visit the proposed residential habilitation service location at their convenience, but at a time that is not disruptive to the individuals currently living at the proposed location;

4.  Invite the parties to consult with the service coordinator or designee to discuss the advantages and disadvantages of the proposed residential habilitation service location. This consultation may take place as part of the modification

December 30, 2016

## Policy for ABI-RH and MFP-RS Waivers

meeting;

    5. A request for consent to the proposed change in residential habilitation service location.

B. Positive Behavior Supports. In accordance with DDS regulations at 115 CMR 5.14, all programs operated, funded, or licensed by DDS shall adhere to 115 CMR 5.14, when promulgated, in the development and implementation of Positive Behavior Supports.

C. Individual Service Plan Informal Conference Resolution Process

    1. <u>Scope and Purpose of Individual Service Plan Informal Conferences</u>: This section contains the standards and procedures for redress of certain matters related to service planning affecting Waiver participants. The provisions of this section shall not apply to and shall not be used to resolve disagreements within the State Agency or between the State Agency and providers concerning services or supports to participants.

    2. <u>No Limitation of Right to Fair Hearing</u>: No provision of this policy should be construed to limit a Waiver participant's right to a fair hearing pursuant to 130 CMR 610: *MassHealth: Fair Hearing Rules* or require a Waiver participant to exhaust the informal conference process prior to pursuing a Fair Hearing. Informal conferences are not a substitute for a formal Fair Hearing available under 130 CMR 610. If an available ground for a Fair Hearing is identified at an informal conference, applicable parties to an informal conference retain the right to appeal based on that ground pursuant to 130 CMR 610.

    3. <u>Subject Matter of an Individual Service Plan Informal Conference</u>: The following issues may be the subject of an ISP informal conference pursuant to the procedures set forth below:

        a. Whether the assessments performed or arranged by the State Agency or the provider to serve as the basis for the development and review of a participant's ISP were sufficient for that purpose;

        b. Whether the goals identified in the ISP are consistent with and promote the outcomes set forth in the ISP;

        c. Whether the types of services and supports identified in the ISP are the least restrictive, appropriate, and available to meet the goals stated in the ISP;

        d. Any modification to the requirements of the ISP based on assessed needs;

        e. Whether the recommendation of the ISP team with regard to the participant's ability to make personal and financial decisions is consistent

December 30, 2016

**Policy for ABI-RH and MFP-RS Waivers**

with the available evidence;

    f.  Whether the ISP was developed, reviewed, or modified in accordance with the procedures set forth in in this policy; and

    g.  Whether the ISP is being implemented.

4.  <u>Initiation of an Individual Service Plan Informal Conference</u>:

    a.  An ISP informal conference may be initiated by the participant for whom the ISP has been developed, his or her family, guardian, LAR, and designated representative, if authorized and applicable, except that if the participant has a guardian or LAR, an appeal may only be filed by the participant and his or her guardian, LAR or designated representative.

    b.  An ISP informal conference is initiated by notifying in writing the Regional Program Coordinator for the Region in which the applicant or participant resides.

    c.  The participant who is the subject of the service plan informal conference shall be a party, whether or not he or she initiated the service informal conference process.

5.  <u>The Individual Service Plan Informal Conference Process</u>. Informal conferences are a process put in place to facilitate or obviate the need for a Fair Hearing under 130 CMR 610 in cases that the issue raised by the participant is resolved at the Informal Conference. If all parties agree on a resolution to the informal conference, the process will end with the informal conference. If all parties do not agree on a resolution, the Waiver participant may elect to pursue a Fair Hearing in accordance with appeal rights available under 130 CMR 610: *MassHealth: Fair Hearing Rules*, and as described below at section IV.D.

    a. Participation in an informal conference is voluntary. An informal conference is not required in order for a waiver participant to request an appeal under 130 CMR 610: *MassHealth: Fair Hearing Rules.* A waiver participant may pursue informal conference and appeal rights simultaneously.

    b. The Regional Program Coordinator or designee shall hold an informal conference within 30 days of notification of the service plan informal conference. The official responsible for the conference shall notify the participant, the participant's family, guardian, LAR, and designated representative, if applicable, and the service coordinator of the date of the informal conference.

    c. The purpose of such informal conference shall be to conciliate the

**Policy for ABI-RH and MFP-RS Waivers**

issues raised by the participant and, to the extent that conciliation is not accomplished, to clarify issues for review and determine the parties' agreement, if applicable, to the material facts of the matter.

d. Except to the extent that statements of the parties are reduced to an agreed statement of facts, all statements of the parties made during the informal conference shall be considered as offers in compromise, and shall be inadmissible in any subsequent hearing or court proceeding.

e. The Regional Program Coordinator or designee shall issue a written letter within 10 days of the Informal Conference that summarizes the outcome of each basis for the Informal Conference.

D. Fair Hearing. The MassHealth Board of Hearings has authority to hold a fair hearing for the following actions or inactions by the State Agency pursuant to 130 CMR 610.032: *Grounds for Appeal*:

1. Denial of services;

2. Suspension of services;

3. Reduction of services;

4. Modification of services;

5. Termination of services; and

6. Failure to act on a participant's request for a service within 30 days of receiving such request.

E. Individual Rights

1. General Principles. The following principles promote the welfare and dignity of all Waiver participants:

    a. Services and supports are to be designed to provide meaningful assistance to the participant in acquiring and maintaining physical, mental, and social skills that enable the participant to cope most effectively with his or her own person and environment.

    b. Residential settings are integrated in and support full access of individuals to the greater community, including opportunities to engage in community life, control personal resources, and receive services in the community, to the same degree of access as other individuals.

    c. Services and supports are to be provided in a manner that promotes:

19

December 30, 2016

**Policy for ABI-RH and MFP-RS Waivers**

1. Human dignity;

2. Humane and adequate care and treatment;

3. Self-determination and freedom of choice to the participant's fullest capability;

4. The opportunity to live and receive services or supports in the least restrictive and most typical setting possible;

5. The opportunity to undergo typical developmental experiences, even though such experiences may entail an element of risk; provided however, that the participant's safety and well-being shall not be unreasonably jeopardized; and

6. The opportunity to engage in activities and styles of living which encourage and maintain the integration of the participant in the community including:

   a. Social interactions in integrated settings typical of the community that maximize the participant's contact with others who live or work in that community;

   b. Activities, routines, and patterns of living which are appropriate to the participant's age and the practices of the surrounding community, and which are consistent with his or her interests and capabilities;

   c. Communication by staff in a manner appropriate to the participant's age and the practices of the surrounding community;

   d. Recreation and leisure time activities appropriate to the participant's age and the practices of the surrounding community and which are consistent with the participant's interests and capabilities;

   e. A home with a design that takes into consideration numbers of individuals present, physical comfort, style of decor, opportunities for privacy, external appearance, type of neighborhood where the home is located, and access to the community;

   f. Possessions that are appropriate to the participant's age and the practices of the local community and consistent

December 30, 2016

### Policy for ABI-RH and MFP-RS Waivers

with the participant's interests;

g.  Privacy, including the opportunity wherever possible, to be provided clearly defined private living, sleeping, and personal care spaces; and

h.  Freedom from discomfort, distress, and deprivation that arise from an unresponsive and inhumane environment.

2.  Rights of Participants. Participants served by providers subject to this policy shall have, in addition to rights specified in applicable state or federal laws or judicial decrees, the following rights. A denial, restriction, or modification of any of these rights shall be deemed a modification of the ISP and require compliance with the policy governing ISP modifications.

a.  The right to communicate, including:

1.  The right to have reasonable access to a telephone, the internet, email, social media, and other web-based communication applications and the opportunity to make and receive confidential communications, and to have assistance when desired and necessary to implement this right; and

2.  The right to unrestricted mailing privileges, to have access to stationery and postage, and to assistance when desired and necessary to implement this right.

b.  The right to be protected from private and commercial exploitation including: the right not to be exposed to public view by photograph, film, video, interview, or other means unless prior written consent of the participant or guardian, if applicable, is obtained for such release; and the right not to be identified publicly by name or address without the prior written consent of the participant or guardian, if applicable.

c.  The right to be visited and to visit others under circumstances that are conducive to friendships and relationships, in accordance with the following requirements:

1.  A participant shall be permitted to receive visitors, unless ill or incapacitated to the degree that a visit would cause serious physical or emotional harm; provided that the participant's attorney, guardian, legal or designated representative, if applicable, personal physician, clergy, or family members, if authorized, shall be permitted to visit at all times, unless the participant objects, and shall be provided with a suitable place to confer on a confidential basis;

21

December 30, 2016

**Policy for ABI-RH and MFP-RS Waivers**

    2. Reasonable restrictions may be placed on the time and place of the visit to protect the welfare of the participant or the privacy of other individuals and to avoid serious disruptions in the normal functioning of the provider. Arrangements shall be made for private visitation to the maximum extent possible.

  d. The right to enjoy basic goods and services without threat of denial or delay for any purpose by providers. Basic goods and services include at least the following:

    1. A nutritionally sound diet of wholesome and appetizing food served at appropriate times and in as normative a manner as possible;

    2. Opportunities for daily recreational activity and physical exercise, as appropriate to the age and interests of the participant;

    3. Unrestricted access to drinking water and bathrooms;

    4. Opportunities for social contact in the participant's home, work, or community environments;

    5. Opportunities to keep and use personal possessions;

    6. Access to individual storage space for personal use.

  e. The right to a reasonable expectation of privacy. In connection with hygiene and medication administration by non-licensed staff, such an expectation includes, to the extent possible, assistance by same-gender staff for hygiene and medication administration when the partial or complete disrobing of the participant is required.

  f. The right to decline any service or support.

3. <u>Mistreatment</u>. No provider shall mistreat an individual or permit the mistreatment of an individual by persons in its employ or subject to its direction. Mistreatment includes any intentional or negligent action or omission that exposes an individual to a serious risk of physical or emotional harm. Mistreatment includes, but is not limited to:

  a. Corporal punishment or any other unreasonable use or degree of force or threat of force not necessary to protect the participant or another person from bodily harm;

22

**Policy for ABI-RH and MFP-RS Waivers**

b. Infliction of mental or verbal abuse, such as screaming, name-calling, or any other activity which is damaging to the participant's self-respect;

c. Incitement or encouragement of others to mistreat the participant;

d. Change of location or the threat of change of location of a participant for punitive reasons;

e. Termination of services or supports or threat of termination of services or supports for punitive reasons;

f. Any act in retaliation against a participant for reporting any violation of HCBS Waiver policies and regulations;

g. The use of any restraint for the convenience of staff;

h. Sexual abuse of a participant;

i. Intentional failure to obtain or render medical services; and

j. Misappropriation of an individual's funds.

4. <u>Legal Competency, Guardianship, and Conservatorship.</u>

The following are general principles governing incapacitated persons pursuant to the Massachusetts Uniform Probate Code. The State Agency is not responsible under this policy to provide legal assistance to Waiver participants or to petition for guardianship on their behalf or on their family members' behalf but may do so at its discretion.

a. All Adults Presumed Competent Absent Legal Determination to the Contrary. A participant who has reached 18 years of age shall be presumed to be competent to manage his or her affairs, including to contract, to hold a professional, occupational, or vehicle operator's license; to make a will, or to vote, and no participant shall be presumed incompetent solely by reason of receiving services or supports from any provider, or services or supports licensed by the State Agency absent a legal determination, including a guardianship or conservatorship proceeding or invocation of a health care proxy.

b. Notification of Possible Need for Assistance with Decision-making. In

23

December 30, 2016

### Policy for ABI-RH and MFP-RS Waivers

the event that a participant's ISP team has reason to believe that he or she lacks capacity to make informed decisions with regard to financial affairs, the State Agency or the head of the provider shall notify the participant's nearest living relatives in writing, with an accompanying recommendation that steps to protect the participant's finances be taken. Such steps may include the appointment of a representative payee, co-signatory bank account, or a shared or delegated money-management plan or the appointment of a conservator. A conservator shall be recommended only if the State Agency or head of the provider has reason to believe that alternatives such as a representative payee, co-signatory bank account, or a shared or delegated money management plan are inadequate to protect the participant from a substantial and unreasonable risk to his or her property

   c. Guardianship of the Person; Least Restrictive Form of Guardianship. If a participant's ISP team has reason to believe that an individual lacks capacity to make informed decisions with regard to personal affairs, and the participant does not have a legally authorized representative, the State Agency or the head of the provider shall notify the participant's nearest living relative in writing, with an accompanying recommendation for supports necessary to assist the participant in decision-making. A guardian shall be recommended only if:

      1. the State Agency or head of the provider has reason to believe that no legally authorized representative exists, the less restrictive alternatives or other supports are inadequate to protect the participant from unreasonable risk to his or her health and welfare; and

      2. the type of guardianship recommended shall be the narrowest and least restrictive necessary to protect the participant from unreasonable risk to his or her health and welfare.

5. Consent. The consent of the participant or guardian or LAR, if applicable, shall be required for all Waiver service referrals and service planning decisions made in the context of the ISP process. Such consent must be voluntary approval given by written or verbal word, implied by the action of a person, with adequate information and sufficient understanding to comprehend the consequences of the decision.

6. Labor.

24

December 30, 2016

**Policy for ABI-RH and MFP-RS Waivers**

a. No participant shall be required to assume the day-to day
   responsibilities of the provider or the regular care, treatment, or
   supervision of other individuals; provided, however, that:

   1. Participants may be expected to join in normal housekeeping
      activities and light home maintenance functions in their own
      home; and

   2. Participants involved in other work shall be compensated in
      accordance with applicable state and federal laws regarding
      wages and hours.

b. Any participant may voluntarily perform any labor available, provided
   that all federal and state legal requirements are met.

7. <u>Possessions and Funds</u>.

   a. No provider shall interfere with the right of a participant to acquire,
      retain, and dispose of personal possessions unless authorized by a
      guardian, conservator, or representative payee or other LAR, if
      applicable; unless the interference or restriction is part of a duly
      developed and reviewed ISP or positive behavior support plan; unless
      otherwise ordered by the court; or unless possession poses an immediate
      threat of serious physical harm to the participant or other persons. In the
      event of restriction of possession by the provider on the grounds of
      imminent and serious physical harm, the provider shall be authorized to
      place the object in custodial safekeeping for the participant.

      1. Any restriction on personal possessions or funds shall be
         documented in the participant's provider record, and a copy sent
         promptly to the provider's human rights committee.

      2. Such restriction shall be accompanied by a training plan or a
         positive behavior support plan, as appropriate, documented in the
         participant's ISP, to eliminate the need for the restriction.

   b. Where a participant seeks or requires assistance in the management or
      expenditure of funds, the provider shall establish, or assist the participant
      to establish, an individual interest-bearing bank account under the

25

December 30, 2016

### Policy for ABI-RH and MFP-RS Waivers

participant's name. All principal and interest shall be the property of the participant.

1. Unless a guardian or legally authorized representative has been appointed, the participant shall have an unrestricted right to manage and spend his or her funds; provided, however, that if a determination is made pursuant to the development or review of the participant's ISP that the participant lacks capacity to manage and spend all or a portion of his or her funds, an ISP goal shall be developed to advise and assist the participant to manage and expend that portion of the participant's funds, in accordance with his or her needs, capabilities, interests, and desires.

2. The objectives to facilitate the ISP goal shall be the least restrictive possible to meet the participant's needs for assistance and may include advice and training in the management and expenditure of funds, two-signature (co-signatory) accounts, and representative payee accounts.

3. The provider shall obtain the agreement of the participant, or LAR if applicable, for any plan involving shared or delegated management responsibilities. Where the participant does not have a LAR and is not capable of such agreement, the head of the provider may authorize a plan involving shared or delegated management responsibility where necessary and as appropriate. This provision shall not apply, however, where the head of the provider has reason to believe that shared or delegated management is not sufficient to protect the participant's assets or where the participant has cash or assets easily converted into cash in excess of $10,000.

4. Where the provider has shared or delegated management responsibilities, it shall meet the following requirements:

   a. Participants' funds shall not be applied to goods or services which the provider is obligated by law or funded by contract to provide;

   b. The provider or provider staff may not expend or borrow the funds of any participant for the use of anyone other than that participant;

26

**Policy for ABI-RH and MFP-RS Waivers**

    c.  The provider or provider staff shall have no direct or indirect ownership or survivorship interest in the funds;

    d.  for the ISP goal pertaining to shared or delegated management responsibilities shall provide strategies to eliminate the need for such assistance, unless it is established by clinical evaluation that the participant cannot learn how to manage or spend any portion of his or her funds, even with supports;

    e.  Provider staff shall not participate in arrangements for shared or delegated management of the participant's funds except as representatives of the provider;

    f.  A record shall be kept of every transaction, including the date, amount received or disbursed, the manner in which such funds were managed or expended, identification of involved parties, and receipts for expenditures exceeding $25;

    g.  The participant and guardian or other legal representative, if applicable, or the State Agency may inspect such records and may demand an accounting at any time;

    h.  Funds held by the provider pursuant to a shared or delegated money management plan shall be treated as the property of the participant for the purpose of collecting room and board. The participant and LAR, if applicable, shall be informed of any room and board charges before services begin and following any change in the cost of services. These charges shall be treated as any other significant debt of the participant, to be collected only after an appropriate explanation and written billing, including notice of means available to contest the charges for room and board. A copy of this billing shall be entered into the participant's record;

    i.  Any arrangements made for a participant to move from one provider or location to another shall include provisions for transferring shared or delegated financial

27

December 30, 2016

**Policy for ABI-RH and MFP-RS Waivers**

management responsibilities to the receiving provider or location;

j.  The provider shall consider, as part of the ISP process, alternatives to involvement by persons affiliated with the provider. Such alternatives may include family members, outside representative payees, durable powers of attorney, conservators, and guardianship;

k.  The participant shall be informed of all proposed expenditures, and any expression of preference shall be honored if possible; and

l.  Expenditures shall be made only for purposes which directly benefit the participant, in accordance with his or her interests and desires.

c.  With the assistance of the State Agency, every provider shall develop procedures to assist participants and their LARs, if applicable, in determining eligibility and applying for financial benefits.

d.  Where a provider has shared or delegated money management responsibilities, it is required to have written procedures for implementing the State Agency's regulations and policies regarding participant funds and for maintaining accurate financial accounts of such funds.

8.  Participant Share for Room and Board.

a. General Requirement. Participants living in group homes and shared living settings licensed by the State Agency shall make payments in accordance with the applicable Waiver's requirements.

b. Specific Share Amount. Absent a determination of a specified hardship exemption, as provided below, participants must contribute 75% of their monthly recurrent income to the room and board of group homes and shared living settings. For an individual receiving recurrent payments and earned income, the monthly fee is 75% of recurrent payments plus an additional 50% of earned income, when that earned income exceeds $65 in a given month. At a minimum, $200 must be excluded for the participants' personal needs' expenses.

28

December 30, 2016

**Policy for ABI-RH and MFP-RS Waivers**

c. Payment. Participant payments for room and board are made directly to the Waiver provider.

d. Hardship Exemption. For a participant who has necessary expenses but does not have sufficient funds in their monthly personal needs amount to pay for these expenses in a particular month, the monthly participant share for room and board may be reduced by an amount that will enable the individual to pay such expenses. The participant, the service coordinator, and those involved in the ISP development may discuss the basis for such an exemption, and may assist the participant in submitting a request for exemption.  A decision regarding the amount and duration of any hardship exemption will be made by the State Agency and communicated to the participant in writing within 30 days of receiving the request. A hardship exemption may be provided by the State Agency without the ISP team authorizing the request for exemption. Necessary expenses may include but are not limited to: legal obligations such as alimony and child support; and medical expenses.

e. Assisted Living Residences. Participants living in assisted living residences shall be responsible for the full room and board payment.

9. No Restraints. The use of restraints is not allowed in the Waivers. The application of any restraint or use of a restraint by providers must be reported by the provider as an incident in the Home and Community Services Information System (HCSIS) and to the DPPC. For further guidance regarding restraints, please see http://www.mass.gov/cohhs/docs/dmr/hcsis/mrc-dds-alcohol-unauthorized-restraints.pdf.

10. Medication.

a. Medication shall not be used by Waiver providers as a punishment, for restraint, or in quantities that interfere with the Waiver participant's habilitation.

b. Medication shall not be used by Waiver providers for the convenience of staff or as a substitute for programming.

c. The administration of medications for participants who are not self-medicating is governed by regulations promulgated by the Department

29

**Policy for ABI-RH and MFP-RS Waivers**

of Public Health at 105 CMR 700. These regulations establish the training and certification requirements for non-licensed staff as well as safety, storage, and documentation requirements regarding medication orders and administration.

d. Participants whose ISP teams determined that they may be capable of benefiting from training to obtain or enhance self-medication skills shall receive such training.

F. <u>Investigations and Reporting Responsibilities</u>. Complaints of abuse or mistreatment shall be investigated pursuant to 118 CMR 1 *et seq.* or 115 CMR 9, as appropriate. Provider employees are mandated to file a complaint with DPPC when he or she has reasonable cause to believe that abuse or mistreatment of a participant has occurred. If a participant asks a provider employee for assistance, such employee shall direct the participant to an appropriate employee to assist in filing a complaint with DPPC.

December 30, 2016

<u>**Policy and Procedures for ABI-N and MFP-CL Waivers**</u>

**Acquired Brain Injury–Non-Residential Habilitation Waiver Program and Money Follows the Person–Community Living Waiver Program**

**Policy and Procedures**

# I.    Purpose

The purpose of this policy is to lay out the process, principles, and method of person-centered planning and informal conferences under the Acquired Brain Injury—Non Residential Habilitation (ABI-N) and Money Follows the Person Community Living (MFP-CL) Home and Community-based Services Waivers ("the Waivers"); to define and safeguard the individual rights of Waiver participants in these Waivers; and to indicate the applicable regulations governing investigations and reporting responsibilities of the State Agency and providers under these Waivers.

# II.    Scope

This policy applies to the State Agency responsible for the operation of the ABI-N and MFP-CL Waiver programs. This policy provides protections and defines responsibilities of the individuals that are receiving services and supports through these Waivers as well as the obligations and responsibilities of the State Agency and the Waiver providers coordinating and providing services and supports under the ABI-N and MFP-CL Waivers. In the event of any conflict in interpretation between this policy and the referenced Waivers, MassHealth regulations, applicable case law, or other applicable statutes or laws, the conflict shall be resolved in favor of the other authority and laws, as applicable.

# III.    Definitions

**Case Manager:** the person designated by the state agency to arrange, coordinate, monitor, or to remain informed about services or supports provided, purchased, or arranged by the state agency for a particular participant and to facilitate the development of a PCP.

**Community Based Services Director:** A State Agency employee charged with the implementation of the overall HCBS Waiver Program operational service delivery system for the State Agency responsible for the operation of the Waiver.

**Consent:** voluntary approval given by written or verbal word, or implied by the action of a person, with adequate information and sufficient understanding to comprehend the consequences of the decision.

**Designated Representative:** a person who has come forward as an advocate for the Waiver participant's interests, and whom the participant has, through consent, chosen as a representative in connection with the development and review of the PCP, who is not otherwise disqualified from taking an appeal therefrom, and who is acknowledged by the

**Policy and Procedures for ABI-N and MFP-CL Waivers**

State Agency to be the designated representative for the individual in connection with such service planning in accordance with this policy.

**Disabled Person's Protection Commission (DPPC):** the commission established under M.G.L. c. 19C to provide for the investigation and remediation of instances of abuse and neglect committed against adults with disabilities.

**Home and Community-based Service (HCBS) Waiver Program (Waiver):** one or both of the following programs established pursuant to 42 U.S.C. 1396n: Acquired Brain Injury—Non Residential Habilitation (ABI-N); Money Follows the Person—Community Living (MFP-CL).

**Legal Representative or Legally Authorized Representative (LAR):** a person representing the participant in connection with a particular matter, including a health care agent, durable power of attorney, representative payee, legal advocate/attorney, or court-appointed guardian or conservator.

**Least Restrictive:** settings, modes of services, and styles of living or working that are most similar to and most integrated with what is typical and age-appropriate in the community, and which interfere the least with the Waiver participant's independence.

**Massachusetts Rehabilitation Commission (MRC):** the state agency organized under M.G.L. c. 6, Sec. 74.

**MassHealth:** the medical assistance and benefit programs administered by the Executive Office of Health and Human Services in accordance with the provisions of M.G.L. c. 118E and pursuant to Title XIX of the Social Security Act (42 U.S.C. 1396), Title XXI of the Social Security Act (42 U.S.C. 1397), M.G.L. c. 118E, and other applicable laws and waivers to provide and pay for medical services to eligible members.

**Objective:** short term outcomes stated in behavioral or otherwise measurable terms, expected to be achieved through the provision of a particular service or support, the implementation of a particular intervention strategy, or a change of modification of the environment.

**Participant:** see definition for Waiver Participant.

**Person Centered Plan (PCP):** the documents, including the individual service plan and plan of care, developed by the participant, his or her guardian or LAR, and his or her case manager that presents the vision and goals of the participant in transitioning to and living in the community, and which uses the Participant's vision and set of goals to guide and focus his or her authorized community services. The PCP is developed, implemented, reviewed, and modified according to the requirements of this Policy.

**PCP Team:** The individuals invited by the participant and his or her guardian or LAR, if applicable, to participate in developing the initial or subsequent written plans to guide

<u>**Policy and Procedures for ABI-N and MFP-CL Waivers**</u>

service provision for the participant. At minimum, the PCP team consists of the participant (and his or her guardian, LAR or Designated Representative) and the case manager. The participant may choose to invite family, provider staff, or others that he or she believes will support plan development.

**Provider:** the individual or other legal entity approved as a MassHealth provider of HCBS Waiver services with day-to-day responsibility for the operation of services or supports and regulated or overseen by MassHealth, as applicable.

**Regional Waiver Supervisor:** A State Agency employee charged with the implementation of the overall HCBS Waiver Program operational service delivery system for the geographic region designated by the State Agency responsible for the operation of the Waiver.

**Representative:** see definition for Designated Representative.

**Services:** Home and community-based waiver services covered under the Waiver in which the Waiver participant is enrolled and as described in Appendix C of the applicable federally-approved Waiver application.

**State Agency:** The Massachusetts Rehabilitation Commission (MRC) in its operation of the HCBS Waivers and pursuant to an Interdepartmental Service Agreement with the Executive Office of Health and Human Services.

**Supports:** resources and strategies that promote the interests and causes of Waiver participants and that enable participants to access resources, information, and relationships inherent in integrated work and living environments, and that result in participants' enhanced independence, productivity, community integration, and satisfaction.

**Vision Statement:** a statement of what is important to the Waiver participant in his or her life. It describes the participant's preferences on how he or she wishes to live, work, and spend his or her leisure time and identifies interests, relationships, and activities he or she would like to continue or explore. If the participant is unable to fully express him or herself, the PCP team will assist in the development of the participant's vision statement. The vision statement expresses the participant's vision; it does not create any enforceable rights and is not binding on the State Agency.

**Waiver Participant:** a MassHealth member who has been determined eligible for, and is enrolled in, an ABI-N or MFP-CL Waiver.

## IV.   Policy

A. Person-Centered Planning: The following are the principles and timelines for planning and developing a Person Centered Plan for individuals served under the ABI-N or MFP-CL Waivers. Notwithstanding any language contained herein, the grounds for an appeal of a Person Centered Plan shall be in accordance with, and limited to, the grounds set forth in the MassHealth Fair Hearing regulation at 130 CMR 610.032: *Grounds for Appeal*.

### Policy and Procedures for ABI-N and MFP-CL Waivers

1. <u>Application and Scope of Person Centered Plans</u>: all Waiver participants shall receive services under the Waiver programs in accordance with the requirements of the Waiver provisions and the Person Centered Plan.

2. <u>Principles of Person-Centered Planning</u>: The following principles govern person-centered planning:

   a. Respect for the dignity and rights of each participant;

   b. Humane and adequate care and treatment;

   c. Self-determination and freedom of choice to the person's fullest capacity;

   d. The opportunity to live and receive services in the least restrictive and most typical setting possible;

   e. The opportunity to undergo typical developmental experiences, even though such experiences may entail an element of risk, provided that the person's safety and well-being will not be unreasonably jeopardized; and

   f. The opportunity to engage in activities and styles of living that encourage and maintain the integration of the participant in the community through individualized social and physical environments.

3. <u>Participation in Person-Centered Planning</u>:

   a. The PCP Team: A Person Centered Plan (PCP) shall be developed by the participant, the case manager, and the individuals chosen by the participant to support the planning process.  This may include the participant's family as requested by the participant or his/her guardian or LAR, if applicable, the provider(s) of applicable services to be included in the PCP, designated representatives of the participant, and any others who provide friendship and support to the participant or those that the participant considers necessary unless the participant or guardian knowingly objects to such person's participation.

   b. The State Agency shall provide reasonable assistance and accommodations to enable the participant and other members of the PCP Team to participate meaningfully in the development, review, and modification of the PCP.

   c. The participant shall be involved as fully as possible to participate in the process, work with the case manager to develop the vision statement, determine the agenda for the format of the PCP meeting, determine who to invite to the PCP meeting, indicate approval of or concerns related to

**Policy and Procedures for ABI-N and MFP-CL Waivers**

the PCP, participate fully in the implementation, modification, and review of the PCP, and provide ongoing feedback about satisfaction with PCP implementation and the need for modification.

4. <u>Case Manager Responsibilities</u>: The case manager shall:

   a. Explain the purpose of the PCP and the PCP meeting to the participant and guardian or LAR, if applicable, at least 45 days prior to the projected date of the PCP meeting. The 45 day period shall not apply in situations in which a shorter time period is necessary to avoid undue delay in initiation of services and supports, such as when the participant has already transitioned to the community;

   b. Develop an understanding of the participant's vision statement, goals, satisfaction with services, and current circumstances;

   c. In conjunction with the participant and guardian or LAR, if applicable, determine the issues to be reviewed at the PCP meeting, who should be invited to attend, and when and where the PCP meeting should be held;

   d. Conduct an in-person meeting with the participant and, where applicable, with the guardian or LAR, if applicable, to develop the vision statement for the participant's first PCP, when significant changes have occurred or are anticipated in the participant's life, or at the request of the participant or guardian;

   e. Consult with the participant's family and guardian or LAR, if applicable and authorized to do so, related to the PCP process;

   f. Determine with the participant, guardian or LAR, if applicable, if any assessments or professional consultations would support the development, modification, or review of the PCP, and arrange for such assessments or consultations at least 45 days prior to the projected date of the PCP meeting. The 45 day period shall not apply in situations in which a shorter time period is necessary to avoid undue delay in initiation of services and supports, such as when a participant has already transitioned to the community;

   g. For annual PCP development, and for quarterly PCP reviews, provide written notice of the date, place, time, and purpose of the PCP meeting at least 30 days in advance of the PCP meeting;

   h. With appropriate authorization and upon request, make assessments and consultations available to the participant and PCP team at least seven days in advance of the PCP meeting;

April 3, 2017

**Policy and Procedures for ABI-N and MFP-CL Waivers**

     i.   Convene and facilitate meetings for the development, modification, and review of the participant's PCP;

     j.   Ensure that PCP meetings are conducted in a manner that promotes meaningful participation by the participant;

    k.   Arrange for reasonable assistance and accommodations to enable the participant and other members of the PCP team to participate meaningfully in the development, review, and modification of the PCP;

    l.   Monitor the implementation of the PCP and the adequacy and appropriateness of supports and services being provided based on the requirements of the PCP;

    m.   Facilitate participants' access to the Person Centered Plan Informal Conference Process pursuant to this policy;

    n.   Coordinate the provision of supports to the participant in accordance with the PCP;

    o.   On a quarterly basis, review and evaluate the implementation of the PCP and the need for any modifications, as well as the satisfaction of the participant and the participant's family and guardian and LAR, if applicable, with the supports and services provided;

    p.   Maintain records of the PCP reviews in the participant's record; and

    q.   On a quarterly basis, or more frequently if beneficial and if the participant agrees, visit with and discuss any issues with the participant related to the services and supports provided.

5.   <u>Service Provider Responsibilities</u>: the State Agency shall ensure that the providers of services and supports pursuant to the Person Centered Plan (PCP):

    a.   Work collaboratively with the participant and other team members to identify the participant's goals;

    b.   Participate in the development of a PCP as requested by the participant, and in the event the provider completes assessments or professional consultations, forward the results of those assessments or consultations to the participant's case manager at least 15 days prior to the PCP meeting. The 15 day period shall not apply in situations in which a shorter time period is necessary to avoid undue delay in initiation of services and supports, such as when a participant has already transitioned to the community;

                    

**Policy and Procedures for ABI-N and MFP-CL Waivers**

    c. As requested by the participant and the case manager, and at least 15 days prior to the PCP meeting, suggest individualized and measurable objectives to support achievement of the goals established by the participant, as well as the strategies for attainment of objectives. The 15 day period shall not apply in situations in which a shorter time period is necessary to avoid undue delay in initiation of services and supports, such as when a participant has already transitioned to the community;

    d. Implement the PCP by providing the agreed upon supports;

    e. Provide reports regarding the implementation of the PCP and provision of services to the case manager, participant, guardian or LAR, if applicable, and family, if authorized, at least quarterly or more frequently if the case manager requests; and

    f. Promptly notify the case manager of issues or circumstances that may affect the appropriateness of the current PCP or which may warrant modification of the PCP.

6. Assessments and Consultations:

    a. The purpose of assessments and consultations is to obtain information that will assist the participant and other team members to identify the strategies and supports that are likely to be effective in assisting the participant to attain his or her goals.

    b. The case manager shall determine, in conjunction with the participant and other PCP team members, whether assessments and professional consultations would benefit the participant or assist the team in identifying strengths and limitations related to the participant's ability to engage fully in the community as he or she chooses. Such assessments may include, but shall not be limited to, an assessment of the participant's daily living skills, communication skills, psychological status, social network, and whether the participant would benefit from assistive technology. If determined to be beneficial, the case manager shall, with the knowledge and consent of the participant, arrange for such assessments to be conducted. The State Agency shall make best efforts to ensure that assessments and consultations shall reflect the participants' cultural ethnic and linguistic background, as well as any need for accommodation based upon disability or other factors, and will be conducted with respect for the dignity, comfort and convenience of the participant.

    c. If requested, the case manager shall meet with the participant, his or her guardian or LAR, if applicable, and the participant's family, if authorized, in advance of the PCP meeting to discuss the assessments and

## Policy and Procedures for ABI-N and MFP-CL Waivers

consultations and shall, if feasible and requested, arrange an explanatory meeting with the person who performed the assessment or consultation.

7. Development of the Person Centered Plan (PCP)

   a. PCP Meeting. The case manager shall convene and facilitate a meeting with the participant and other members of the PCP team to develop a support plan which sets forth the following: the vision statement and goals of the participant; the services and supports needed by the participant to attain those goals; the availability of needed supports; the party responsible for providing supports; the frequency and duration of supports; and strategies for meeting the support needs of the participant.

   b. Outcomes. The goals, objectives, and any supports or strategies identified in the PCP must be consistent with and promote the following outcomes for participants:

      1. Rights and Dignity. The participant's rights are respected, he or she is supported in the responsible exercise of those rights, and other supports are in place to assist, as necessary, in protecting the participant's human and civil rights; the participant's dignity is recognized and affirmed in the participant's home and community and in the manner in which supports are provided.

      2. Participant Control. The participant has opportunities to exercise control and choice in his or her life, and has access to education, experiences, and supports to increase his or her self-determination; the participant's opinions and preferences are listened to and treated seriously; the participant's needs and preferences are reflected in his or her activities and routines.

      3. Community Membership. The participant has many and varied opportunities to participate in and contribute to the life of his or her community through work and through integrated social and recreational activities as the participant wishes. The participant has a home chosen by the participant located in the community of the participant's choice. The State Agency shall make best efforts to assist the participant in finding or identifying a home that is integrated in the community and access to transportation services which facilitate community participation.

      4. Relationships. The participant has opportunities and support, as needed, to develop, sustain, and strengthen varied and meaningful relationships with family, friends, neighbors and co-workers.

      5. Personal Growth and Accomplishments. The participant has

**Policy and Procedures for ABI-N and MFP-CL Waivers**

access to the supports necessary to enable him or her to contribute to his or her community, be as self-reliant as possible, develop his or her unique talents and abilities, and achieve his or her personal goals.

6.  Personal Well-being (Health, Safety, and Economic Security). The participant receives health care and related services which are sufficient and appropriate to optimize the participant's health and well-being; he or she lives, and works if applicable, in environments that are safe, secure, and are adapted if necessary to meet the participant's needs, and safeguards are in place to respond to emergencies and threats to the participant's health or safety; he or she is supported in managing his or her financial resources as he or she wishes.

c.  Timing of the PCP Meeting. Before the participant transitions into the community, the case manager and participant, with input from his or her guardian or LAR if applicable, shall develop a PCP. The case manager shall convene a meeting to develop the PCP prior to initiation of Waiver services. A PCP shall be developed annually thereafter.

d.  PCP Meeting Components. The PCP meeting shall include but shall not be limited to the following:

1.  Discussion of the participant's vision statement and goals;

2.  Discussion of recent experiences and events that may affect the participant's immediate future, general health, safety, or long-term goals;

3.  Discussion of the participant's satisfaction and ability to achieve his or her goals under the current circumstances, including his or her home, day or employment,  and other services and supports;

4.  Identification of goals related to the participant's vision statement and address assessed needs of the participant;

5.  Development of a plan of care as a part of the PCP that sets forth:

    a.  specific objectives related to the participant's goals;

    b.  the strategies and supports that will be utilized to assist the participant to attain goals and objectives, which may include but shall not be limited to instruction in skills related to health and safety, self-care, communication, home living, work, leisure, social interactions, community

**Policy and Procedures for ABI-N and MFP-CL Waivers**

use, self-direction and functional academics, provision of medical, dental, and specialty services such as physical or occupational therapy, psychiatric or psychological services, legal or advocacy services, and the party responsible for implementation;

c. the settings in which the strategies will be implemented and the services and supports provided;

d. the expected duration and frequency of the supports;

e. the criteria to be utilized in evaluating the effectiveness of services and supports in achieving the participant's goals;

f. any unmet support needs and the strategies that will be used to address those needs;

g. the PCP team member(s) responsible for monitoring and reporting on implementation of the service agreement as well as the format and frequency of such monitoring and reporting; and

h. the date of the next review of the PCP, which can be no later than one year from the date of the PCP meeting.

6. Discussion of newly identified changes in a participant's abilities or life circumstances, if any, that require monitoring by the PCP team over the course of the PCP year.

7. Discussion of known risk factors and of the services and supports that will increase the ability of the participant to manage these risk factors to improve the likelihood of a successful transition to, and ongoing tenure in, the community.

e. Distribution, Approval, and Implementation of the PCP:

1. Within 30 days following the PCP meeting, the PCP shall be reviewed by the participant and the guardian or LAR, if applicable, and the case manager. A notice of appeal rights that are available under Mass Health regulations 130 CMR 610: *MassHealth: Fair Hearing Rules* will be mailed with the PCP. The case manager shall provide notice to the participant, his or her family, if authorized, and guardian or LAR, if applicable, of his or her availability within ten days of its receipt to explain the PCP.

April 3, 2017

**Policy and Procedures for ABI-N and MFP-CL Waivers**

2. The PCP will be approved and signed by the participant and the guardian or LAR, if applicable, or modified to the satisfaction of the participant and the guardian or LAR, if applicable, as needed.

3. The completed and signed PCP will be distributed by the case manager to the participant, family, if authorized, guardian or LAR, if applicable, designated representative, if applicable, and providers.

8. Review of Person Centered Plans:

   a. Frequency of Review. The PCP shall be reviewed and updated on a quarterly basis. The participant or other team members may request more frequent reviews depending on the participant's desires, goals, needs, and circumstances.

   b. Within one year of the date on which a PCP was developed, the case manager shall convene a meeting of the team to review and update the participant's PCP to develop a PCP for the upcoming year.

   c. The case manager shall obtain and distribute any new or updated assessments, review monitoring reports generated by the State Agency and the provider(s), and in consultation with the participant and other team members, make appropriate revisions to the PCP based on a review of the following:

      1. the satisfaction of the participant and others, including the participant's family and guardian or LAR, if applicable;

      2. progress toward achieving the goals identified in the PCP;

      3. any significant changes in the participant's circumstances or abilities including:

         a. changes in the participant's physical or mental health, including a review of the appropriateness and effectiveness of current medications, if applicable;

         b. changes in the participant's financial resources;

         c. changes which may affect the participant's service or support needs;

         d. changes in the participant's ability to make informed decisions regarding his or her personal or financial affairs; and

**Policy and Procedures for ABI-N and MFP-CL Waivers**

  e.  changes in the availability of needed services and supports;

  4.  whether the goals identified in the PCP are consistent with the current desires and needs of the participant and whether the strategies and supports identified in the PCP continue to be the most helpful strategies and supports available to promote achievement of those goals; and

  5.  the continued effectiveness and appropriateness of any authorizations given by the participant, his or her guardian or LAR, if applicable, a court, or other authority.

  d.  Distribution, Approval, and Implementation. The updated PCP shall be distributed, approved, and implemented in accordance with the procedures set forth above.

9.  Modification of Person Centered Plans (PCP)

  a.  The PCP shall be modified when necessary to reflect changes in the participant's goals and needs, to promote a quality of life for the participant which is consistent with the outcomes set forth above, or to provide for the least restrictive, most adequate and appropriate services and supports consistent with the participant's desires and needs.

  b.  Any of the following changes, unless proposed as part of the annual review process, shall be considered a modification of the PCP:

  1.  Any change in the goals for the participant identified;

  2.  Any change in the strategies or types of supports identified pursuant to section IV.A.7.d.5.b. of this policy that will be used to assist the participant to attain the identified goals or address unmet support needs identified pursuant to section IV.A.7.d.5.f. of this policy;

  3.  Any change in the duration or frequency of services and supports;

  4.  Any unplanned change in the participant's Shared Home Supports provider location; and

  5.  Any modification that imposes a restriction or condition upon the participant as described in section IV.A.9.f of this policy.

**Policy and Procedures for ABI-N and MFP-CL Waivers**

c.   Requests for modifications shall be addressed to the case manager and may be initiated by the participant, the participant's family if authorized, the participant's guardian or LAR, if applicable, the case manager, the current provider(s) of services and supports, and the participant's designated representative.

d.   A meeting to determine whether a requested modification should be made shall be convened by the case manager as soon as possible but at least within 30 days of the request for the modification:

   1.   The following persons may be invited to attend the modification meeting at the request of the participant or the guardian or LAR, if applicable, and designated representative, the participant's family, and providers of services to the participant.

   2.   The modification meeting may be held in conjunction with any other meeting that pertains to the PCP that is being held within 30 days of the request for modification.

   3.   At least ten days' notice shall be provided to the participant before a meeting at which a requested modification is to be considered.

e.   The modification meeting and any timeline related to such meeting may be waived by the case manager at his or her discretion with the documented approval of the participant, if not under guardianship, or the participant's guardian or LAR, if applicable, if the participant does not object.

f.   Any modification that imposes a restriction or condition upon the participant must be supported by a specific assessed need and justified in the PCP. The following requirements must be documented in the PCP and their implementation regularly monitored by the case manager:

   1.   Identify a specific and individualized assessed need;

   2.   Document the services and supports used prior to any modifications to the PCP;

   3.   Document less intrusive methods of meeting the need that have been tried but did not work;

   4.   Include a clear description of the condition that is directly proportionate to the specific assessed need;

**Policy and Procedures for ABI-N and MFP-CL Waivers**

    5.  Include a regular collection and review of data to measure the ongoing effectiveness of the modification;

    6.  Include established time limits for periodic reviews to determine if the modification is still necessary or can be terminated;

    7.  Include informed consent of the participant, or guardian or LAR if applicable; and

    8.  Include an assurance that interventions and supports will cause no harm to the individual.

g.  The modified PCP will be approved and signed by the participant or his guardian or LAR, if applicable, or further modified to the satisfaction of the participant or his or her guardian or LAR, if applicable, as needed. The completed and signed PCP will be distributed by the case manager to the participant, family, if authorized, guardian or LAR, if applicable, designated representative, if applicable, and providers.

h.  Emergency Modification. Where modifications are in response to circumstances that pose an emergency involving a serious or immediate threat to the health or safety of the participant or others, the modification may be implemented immediately with the agreement of the participant or his or her guardian or LAR, if applicable, or Designated Representative, if applicable, and the modification meeting may be postponed to a date no later than 30 days after the emergency. On or before the next business day, the case manager shall notify all persons eligible to participate in the modification meeting of the emergency modification.

i.  For participants residing at a Shared Home Supports provider location, in the event that the participant or Shared Home Supports provider determine that the participant can no longer be safely served in his or her current living arrangement, the State Agency shall make best efforts to address the identified safety issue, including through the provision of additional services or supports, as appropriate, and shall make reasonable efforts to assist the participant in locating an alternative Shared Home Supports provider location.

B.  Person Centered Plan Informal Conference Resolution Process

    1.  <u>Scope and Purpose of Person Centered Plan Informal Conferences</u>: This section contains the standards and procedures for redress of certain matters related to service planning affecting Waiver participants. The provisions of this section shall not apply to and shall not be used to resolve disagreements within the State Agency or between the State Agency and providers concerning services or

**Policy and Procedures for ABI-N and MFP-CL Waivers**

supports to participants.

2. <u>No Limitation of Right to Fair Hearing</u>: No provision of this policy should be construed to limit a Waiver participant's right to a Fair Hearing pursuant to 130 CMR 610: *MassHealth: Fair Hearing Rules* or require a Waiver participant to exhaust the informal conference process prior to pursuing a Fair Hearing. Informal conferences are not a substitute for a formal Fair Hearing available under 130 CMR 610. If an available ground for a Fair Hearing is identified at an informal conference, applicable parties to an informal conference retain the right to appeal based on that ground pursuant to 130 CMR 610.

3. <u>Subject Matter of a Person Centered Plan Informal Conference</u>: The following issues may be the subject of a PCP informal conference pursuant to the procedures set forth below:

   a. Whether the assessments performed or arranged by the State Agency to serve as the basis for the development and review of a participant's PCP were sufficient for that purpose;

   b. Whether the goals identified in the PCP are consistent with and promote the outcomes set forth in the PCP;

   c. Whether the types of services and supports identified in the PCP are the least restrictive, appropriate, and available to meet the goals stated in the PCP;

   d. Any modification to the PCP;

   e. Any restriction or condition imposed upon the participant as described in Sections IV.A.9.f or IV.D.6.a. of this policy.

   f. Whether the PCP was developed, reviewed, or modified in accordance with the procedures set forth in in this policy;

   g. Whether the PCP is being implemented;

   h. Whether the recommendation of the PCP team with regard to the participant's ability to make personal or financial decision is consistent with the available evidence.

4. <u>Initiation of a Person Centered Plan Informal Conference</u>:

   a. A PCP informal conference may be initiated by the participant for whom the PCP has been developed, his or her guardian, LAR, or designated representative, if authorized and applicable.

**Policy and Procedures for ABI-N and MFP-CL Waivers**

    b.  A PCP informal conference is initiated by notifying in writing the Regional Waiver Supervisor supervising the case manager assigned to support the participant.

    c.  The participant who is the subject of the Person Centered Plan Informal Conference shall be a party, whether or not he or she initiated the Person Centered Plan Informal Conference process.

5.  <u>The Person Centered Plan Informal Conference Process</u>. Informal Conferences are a process put in place to facilitate or obviate the need for a Fair Hearing under 130 CMR 610: *MassHealth: Fair Hearing Rules* in cases that the issue raised by the participant is resolved at the Informal Conference. If all parties agree on a resolution to the Informal Conference, the process will end with the Informal Conference. If all parties do not agree on a resolution, the Waiver participant may elect to pursue a Fair Hearing in accordance with appeal rights available under 130 CMR 610: *MassHealth: Fair Hearing Rules*, and as described below at section IV.C.

    a.  Participation in an informal conference is voluntary. An informal conference is not required for a waiver participant to request an appeal under 130 CMR 610: *MassHealth: Fair Hearing Rules*. A waiver participant may pursue informal conference and appeal rights simultaneously.

    b.  The Regional Waiver Supervisor or designee shall hold an informal conference within 30 days of notification of the service plan informal conference. The official responsible for the conference shall notify the participant, the participant's guardian, LAR, and designated representative, if applicable, others as applicable and requested by the participant and his representatives, and the case manager of the date of the informal conference.

    c.  The purpose of such informal conference shall be to conciliate the issues raised by the participant and, to the extent that conciliation is not accomplished, to clarify issues for review and determine the parties' agreement, if applicable, to the material facts of the matter.

    d.  Except to the extent that statements of the parties are reduced to an agreed statement of facts, all statements of the parties made during the informal conference shall be considered as offers in compromise, and shall be inadmissible in any subsequent hearing or court proceeding.

    e.  The Regional Waiver Supervisor or designee shall issue a written letter within 10 days of the Informal Conference that summarizes the outcome of each basis for the Informal Conference.

**Policy and Procedures for ABI-N and MFP-CL Waivers**

C. Fair Hearing. The MassHealth Board of Hearings has authority to hold a Fair Hearing for the following actions or inactions by the State Agency pursuant to 130 CMR 610.032: *Grounds for Appeal*:

1. Denial of services;

2. Suspension of services;

3. Reduction of services;

4. Modification of services;

5. Termination of services;

6. Failure to act on a participant's request for a service within 30 days of receiving such request.

D. Individual Rights

1. <u>General Principles</u>. The following principles promote the welfare and dignity of all Waiver participants:

   a. Services and supports are to be designed to provide meaningful assistance to the participant in acquiring and maintaining physical, mental, and social skills that enable the participant to cope most effectively with his or her own person and environment.

   b. Participants are supported to enjoy full access to the greater community, including opportunities to engage in community life, control personal resources, and receive services in the community, to the same degree of access as other individuals.

   c. Services and supports are to be provided in a manner that promotes:

      1. Human dignity;

      2. Humane and adequate care and treatment;

      3. Self-determination and freedom of choice to the participant's fullest capability;

      4. The opportunity to live and receive services or supports in the least restrictive, most integrated, and most typical setting possible;

      5. The opportunity to undergo typical developmental experiences,

April 3, 2017

**Policy and Procedures for ABI-N and MFP-CL Waivers**

even though such experiences may entail an element of risk; provided however, that the participant's safety and well-being shall not be unreasonably jeopardized; and

6. The opportunity to engage in activities and styles of living which encourage and maintain the integration of the participant in the community including:

   a. Social interactions in integrated settings typical of the community that maximize the participant's contact with others who live or work in that community;

   b. Activities, routines, and patterns of living which are appropriate to the participant's age and the practices of the surrounding community, and which are consistent with his or her interests and capabilities;

   c. Communication by staff in a manner appropriate to the participant's age and the practices of the surrounding community;

   d. Recreation and leisure time activities appropriate to the participant's age and the practices of the surrounding community and which are consistent with the participant's interests and capabilities; and

   e. Freedom from discomfort, distress, and deprivation that arise from an unresponsive and inhumane environment.

2. <u>Rights of Participants</u>. Participants served by providers subject to this policy shall have, in addition to rights specified in applicable state or federal laws or judicial decrees, the following rights. A denial, restriction, or modification of any of these rights shall be deemed a modification of the PCP and require compliance with the policy governing PCP modifications.

   a. The right to communicate, including, the right to have assistance when desired and necessary to communicate in the manner chosen by the participant.

   b. The right to be protected from private and commercial exploitation including: the right not to be exposed to public view by photograph, film, video, interview, or other means unless prior written consent of the participant or guardian, if applicable, is obtained for such release; and the right not to be identified publicly by name or address without the prior written consent of the participant or guardian, if applicable.

April 3, 2017

**Policy and Procedures for ABI-N and MFP-CL Waivers**

    c.  The right to be visited and to visit others under circumstances that are conducive to friendships and relationships.

    d.  The right to enjoy basic goods and services without threat of denial or delay for any purpose by providers. Basic goods and services include a diet chosen by the participant provided at the times of his or her choosing.

    e.  The right to a reasonable expectation of privacy. In connection with hygiene and medication administration by non-licensed staff, such an expectation includes, to the extent possible, the right of the participant to request that assistance be provided by same-gender staff for hygiene and medication administration when the partial or complete disrobing of the participant is required.

    f.  The right to decline any service or support.

3.  <u>Mistreatment</u>. No provider shall mistreat an individual or permit the mistreatment of an individual by persons in its employ or subject to its direction. Mistreatment includes any intentional or negligent action or omission that exposes an individual to a serious risk of physical or emotional harm. Mistreatment includes, but is not limited to:

    a.  Corporal punishment or any other unreasonable use or degree of force or threat of force not necessary to protect the participant or another person from bodily harm;

    b.  Infliction of mental or verbal abuse, such as screaming, name-calling, or any other activity which is damaging to the participant's self-respect;

    c.  Incitement or encouragement of others to mistreat the participant;

    d.  Termination of services or supports or threat of termination of services or supports for punitive reasons;

    e.  Any act in retaliation against a participant for reporting any violation of HCBS Waiver policies and regulations;

    f.  The use of any restraint for the convenience of staff;

    g.  Sexual abuse of a participant;

April 3, 2017

**Policy and Procedures for ABI-N and MFP-CL Waivers**

    h.   Intentional failure to obtain or render medical services; and

    i.   Misappropriation of an individual's funds.

4. <u>Legal Competency, Guardianship, and Conservatorship</u>. The following are general principles governing incapacitated persons pursuant to the Massachusetts Uniform Probate Code. The State Agency is not responsible under this policy to provide legal assistance to Waiver participants or to petition for guardianship on their behalf or on their family members' behalf. A participant who has reached 18 years of age shall be presumed to be competent to manage his or her affairs, including to contract, to hold a professional, occupational, or vehicle operator's license, to make a will, or to vote; and no participant shall be presumed incompetent solely by reason of receiving services or supports from any provider, absent a legal determination including a guardianship or conservatorship proceeding or invocation of a health care proxy.

5. <u>Consent</u>. The consent of the participant or guardian or LAR, if applicable, shall be required for all Waiver service referrals and person-centered or service planning decisions made in the context of the PCP process. Such consent must be voluntary approval given by written or verbal word, implied by the action of a person, with adequate information and sufficient understanding to comprehend the consequences of the decision.

6. <u>Possessions and Funds</u>.

    a.   No provider shall interfere with the right of a participant to acquire, retain, and dispose of personal possessions unless authorized by a guardian, conservator, or representative payee or other LAR, if applicable, unless the interference or restriction is part of a duly developed and reviewed PCP; unless otherwise ordered by the court; or unless possession poses an immediate threat of serious physical harm to the participant or other persons.

        1.   Any restriction on personal possessions or funds shall be documented in the participant's record and a copy sent promptly to the case manager.

        2.   Any such restrictions shall be accompanied by a training plan or other services and supports, as appropriate, and documented in the participant's PCP, to eliminate the need for the restriction.

April 3, 2017

**Policy and Procedures for ABI-N and MFP-CL Waivers**

      b.  Where a participant seeks or requires assistance in the management or expenditure of funds, the case manager will support him or her in identifying financial education and training resources or alternative money management strategies. If no less restrictive appropriate option is appropriate, the case manager may arrange for such support from a representative payee, who is not an employee of the program that serves the participant.

    7.  No Restraints. The use of restraints is not allowed in the Waivers. The application of any restraint or use of a restraint by providers must be reported by the provider as an incident in the Home and Community Services Information System (HCSIS) and to the DPPC.

E.  Investigations and Reporting Responsibilities. Complaints of abuse or mistreatment shall be investigated by the Disabled Persons Protection Commission (DPPC) pursuant to 118 CMR 1 *et seq.*, as appropriate.

Provider employees are mandated to file a complaint with DPPC when he or she has reasonable cause to believe that abuse or mistreatment of a participant has occurred. If a participant asks a provider employee for assistance, such employee shall direct the participant to an appropriate employee to assist in filing a complaint with DPPC.

State Agency staff working with participants are also considered mandated reporters and are required to file a complaint with DPPC when he or she has reasonable cause to believe that abuse or mistreatment of a participant has occurred, including receipt of an incident report alleging abuse, neglect, or mistreatment as defined by this policy.  State Agency staff working with participants shall assist participants in filing a complaint with DPPC if requested by the participant.

If a complaint is filed with the DPPC, the State Agency shall perform an Administrative Review for Participant Safety in accordance with this section. In the event that the complaint does not meet DPPC jurisdiction pursuant to 118 CMR 4, the State Agency shall seek to address participant's concerns and issues through an Administrative Review for Complaints Not Investigated by DPPC in accordance with this section.

    1.  Administrative Review for Participant Safety. The State Agency Protective Services Unit reviews complaints of abuse or mistreatment, including the DPPC report, if any, and consults with the Regional Waiver Supervisor and the case manager. PSU staff will then determine whether immediate action is necessary to ensure the safety of the participant, and direct such action be taken by responsible agency staff, in consultation with the Participant and his or her legally authorized

**Policy and Procedures for ABI-N and MFP-CL Waivers**

representative, if any. Actions may include but are not limited to service provider changes required to implement a safe environment for the participant or other changes to ensure the participant continues to receive services in accordance with the PCP. Any changes that require a modification to the PCP must be made in accordance with this policy.

Once the Administrative Review for Participant Safety is concluded, and any necessary actions to ensure participant safety are complete, the matter will be referred to the Administrative Review of Complaints process described below, unless the complaint is under investigation by DPPC.

2.  <u>Administrative Review for Complaints Not Investigated by DPPC.</u>

    a.  Administrative Review of complaints of abuse or mistreatment not investigated by DPPC pursuant to 118 CMR 1 *et seq.* shall be conducted in accordance with this section.

    b.  Administrative Review Process. The Administrative Review shall be conducted by the Regional Waiver Supervisor or designee. Within 30 days of receipt of the complaint, the Supervisor or designee will conduct a fact-finding investigation, including:

        1.  Contacting the provider(s) involved in the complaint;

        2.  Interviewing the participant;

        3.  Interviewing potential witnesses;

        4.  Obtaining additional information not originally provided to the DPPC, including relevant participant records;

        5.  Reviewing the incident report provided to the case manager;

        6.  Reviewing information provided to DPPC; and

        7.  Reviewing the participant's PCP, including a review of the participant's waiver services and other services and supports the participant is receiving.

3.  <u>Administrative Review Outcome.</u> Within 10 days of completion of an Administrative Review for Complaints Not Investigated by DPPC, the Regional Waiver Supervisor shall issue a written decision letter including the outcome of the investigation and required corrective actions, if any. This decision letter shall be provided to the individual, his or her guardian or LAR, if any, and to any other

**Policy and Procedures for ABI-N and MFP-CL Waivers**

party to the complaint. The decision letter may also include recommendations to ensure the safety of the participant and the appropriate provision of services and supports. The Regional Waiver Supervisor and case manager will assist the participant in reviewing and understanding any recommendations or corrective actions resulting from the Administrative Review process, and explain the participants' rights to request reconsideration or further appeal of the administrative review decision.

Any changes that require a modification to the PCP must be made in accordance with this policy. The Regional Waiver Supervisor and the participant's case manager shall be responsible for implementation and monitoring of recommendations or corrective actions agreed to by the participant, including directly observing and securing documentation of the completion of required actions.

4. "Party." For the purposes of Part IV.E. of this policy, the term "party" includes:

   a. The complainant;

   b. The person, persons, or organization complained of or thought or found to be responsible for any incident or condition subject to investigation or appeal;

   c. The guardian of the complainant or person complained of, if any; and

   d. Any other individual aggrieved or harmed (or reasonably believed to be aggrieved or harmed) as a result of the incident or condition, and his or her guardian, if any.

5. Request for Reconsideration. Any party aggrieved by the decision letter or in disagreement with the required corrective action may, within five business days of receipt of the decision letter, file a request for reconsideration with the Community Based Services Director, specifying how the plan is deficient. Within 10 business days of receipt of the request, the Community Based Services Director will review the underlying investigation report and decision letter, and issue further findings and recommendations, as appropriate.

6. Appeal Procedure.

   a. Any party aggrieved by the decision letter or in disagreement with the required corrective action may, within 10 business days of receipt of the decision letter, file an appeal of the decision letter findings or resulting

**Policy and Procedures for ABI-N and MFP-CL Waivers**

corrective actions with the Commissioner.  Grounds for appeal include:

1. a disposition other than assignment of an investigator or deferral of investigation pending investigation by outside authorities;

2. a fact-finding investigation or decision letter which does not comply with the Administrative Review policy described above;

3. an investigation whose findings are not supported by the weight of the evidence;

4. a decision letter whose conclusions are not consistent with, or supported by, the undisputed facts;

5. a decision letter whose conclusions are not supported by the fact-finding investigation; and

6. a decision letter that includes corrective actions that do not sufficiently assure the safety, dignity or welfare of the individual involved in the complaint.

b. Within 30 business days of receiving a timely appeal, the Commissioner shall prepare and distribute a written, dated appeal decision which shall do any combination of the following.

1. Affirm or reject the manner of disposition, with a statement of reasons, and if appropriate, specify a different manner of disposition;

2. Affirm, modify, or reject the decision letter or corrective actions contained therein, with a statement of reasons. The Regional Waiver Supervisor shall then deliver an addendum to the decision letter or corrective actions contained therein to the Commissioner within five days after the appeal decision.

3. Affirm the decision letter or corrective actions contained therein in whole or in part with respect to the findings or conclusions contained therein, with a statement of reasons; or

4. Reject any findings or conclusions contained in the decision letter or corrective actions contained therein, with a statement of reasons. The Regional Waiver Supervisor is responsible for addressing the reasons

Policy and Procedures for ABI-N and MFP-CL Waivers

for the rejection within fifteen business days following the appeal decision, including conducting any follow up investigation, delivering an addendum, and undertaking any other necessary follow-up actions.

c.  If an addendum is necessary, and upon receipt of the addendum, the Commissioner shall proceed as provided under Part IV.E.5. of this policy, provided that the Commissioner shall make and distribute a decision within five business days of receipt of the addendum.

d.  Each party and the Participant's chosen representative shall be invited to any informal inquiry convened by the Commissioner.

e.  All corrective actions and protective services required by the decision letter or corrective actions contained therein shall be implemented pending appeal.

f.  The decision of the Commissioner shall be final.

April 3, 2017